**SIERRA CLUB, Plaintiff,**

v.

**DEPARTMENT OF the INTERIOR et al., Defendants.**

**No. 73 0163.**

United States District Court, N. D. California.

June 7, 1976.

John D. Hoffman and Michael R. Sherwood, Sierra Club Legal Defense Fund, Inc., San Francisco, Cal., for plaintiff.

James R. Browning, U.S. Atty., and Paul E. Locke, Deputy U.S. Atty., San Francisco, Cal., for defendants.

MEMORANDUM OF DECISION

SWEIGERT, District Judge.

On July 16, 1975, this court made its order finding that defendants, Department of Interior, Secretary of Interior and Assistant Secretary thereof for Fish, Wildlife and Parks (hereinafter, "Interior"), had failed to take steps to exercise and perform certain duties imposed upon Interior by the National Park System Act, 16 U.S.C. § 1 et seq., and by the Redwood National Park Act, 16 U.S.C. § 79a et seq., for the protection of that Park, 398 F.Supp. 284.

In that order Interior was directed to take reasonable steps within a reasonable time to exercise the powers vested in it by law (particularly 16 U.S.C. Secs. 79c(e), 79c(d) and 79b(a)) and to perform the duties imposed upon it by law (particularly 16 U.S.C. § 1)—in order to afford as full protection as is reasonably possible to the timber, soil and streams within the boundaries of the Redwood National Park from adverse consequences of lumbering and land

use practices on lands located on the periphery of the Park and on watershed tributaries to streams which flow into the Park.

The order specifically further provided that, if reasonably necessary, defendants should exercise their power of acquisition of interests in land and/or execution of contracts or cooperative agreements with the owners of land on the periphery or watershed, as authorized in 16 U.S.C. Sec. 79c(e); also, if reasonably necessary, modify the boundaries of the Park, as authorized in 16 U.S.C. Sec. 79b(a); also, if reasonably necessary, resort to the Congress for a determination whether further authorization or appropriation of funds will be made for the taking of the foregoing steps and whether the powers and duties of defendants are to remain, or should be modified.

Pursuant to said order defendants have filed herein progress reports dated 11/25/75, 12/15/75, 2/17/76, 3/5/76 and 3/18/76, concerning their efforts to comply with the directives of said order.

*Re Compliance by Interior to Date with Order of July 15, 1975*

From those reports and after hearings thereon the court finds as follows:

On July 15, 1975, Interior informed the Chairmen of the House and Senate Committees on Interior and Insular Affairs of the status of land acquisition and management of the Park and on August 11, 1975 Interior further informed these Chairmen on the same subject, including specific reference to and enclosing a copy of this court's order of July 16, 1975.

On December 24, 1975, Interior sent to the Congress its "Report to the Congress" re Redwood National Park (dated 12/16/75), setting forth five alternative options for protection of the Park. The five alternatives proposed were:

(1) Reliance on state regulation; (2) cooperative agreements (involving the execution of *new* cooperative agreements with timber operators); (3) acquisition of land through leasing and less-than-fee interests —(including certain kinds of agreements, e. g., moratorium on logging or higher logging standards which might involve payment of reimbursement); (4) acquisition of fee interest in lands (involving the acquisition of *additional land,* e. g., to enlarge present boundaries); (5) long-range land use planning (involving the establishment of a future resource protection program for the entire watershed area).[1]

As set forth in that Report, several of the proposed alternatives, i. e., acquisition of land through leasing, less-than-fee interests (involving some kinds of agreed practices requiring reimbursement to timber owners) and acquisition of fee interests in land would involve the expenditure of funds in an amount that could range from about 15 to 500 million dollars—depending upon the alternative, or combination of alternatives, selected.

Interior has determined that it has not had funds available to it for implementing such alternatives.

Further, Interior has no independent authority to directly and formally request additional funds from Congress for those purposes, because any requests to Congress must be made through the President, acting through the President's Office of Management and Budget. (See, Sec. 31 U.S.C. §§ 14, 15, 16; Executive Order 11541; OMB Circular A–19).

As early as March 5, 1973, Interior submitted to OMB for its approval the so-called Curry Report of February, 1973, which report contained a recommendation that a "buffer zone" of land located around the Redwood Creek corridor of the Park be acquired. On March 8, 1973, however, OMB rejected this recommendation of the Curry Report, stating that in its judgment the acquisition of such a buffer zone would cost 15 million dollars or more and would pro-

---

1. Although Interior has not yet followed up its 12/16/75 Report to Congress with a further report, as indicated therein, and although Interior should certainly do so, we are satisfied that the Congress (through its appropriate committees) is now aware of the present endangered situation at the Park and of the efforts by and needs of Interior to protect it.

vide only a limited and uncertain increment of protection for Redwood Creek.

Since March 8, 1973, Interior has not made further requests to the President, through OMB, for additional funds. Its stated reason for this is that, by February 17, 1976, it had determined that, if it could be given by new legislation granting to Interior new additional regulatory power over peripheral timber operations, such additional regulatory power would be adequate for the protection of the Park without expenditure of further funds.

Such requests for new legislation are also required by the Executive to be made through the President's Office of Management and Budget. (See, 31 U.S.C. Sec. 16; Executive Order No. 11541; OMB Circular A–19).

Accordingly, on February 1, 1976, Interior made such a request through OMB, for specifically proposed legislation granting to it such additional regulatory power. However, on April 7, 1976, OMB disapproved that request for the stated reason that such expansion of federal regulation of private property (without compensable takings) should not be sought.

On March 1, 1976, Interior proposed to the three major timber companies involved certain further timber harvesting guidelines and requested voluntary compliance therewith, but, on March 2, 1976, the timber companies announced the adoption of their own guidelines, and on March 19, 1976, the timber companies formally rejected Interior's proposed guidelines. Interior had also unsuccessfully made previous requests of said timber companies (i. e., on July 31, 1975, August 21, 1975 and September 26, 1975) for an 18 months cutting moratorium in specified areas.

On November 17, 1975 and November 18, 1975, Interior also appeared before the California State Board of Forestry requesting the Board to adopt certain timber harvesting guidelines proposed by Interior, but that the California Board has not adopted the proposed guidelines. In a letter dated March 1, 1976, to the Governor of the State of California, Interior referred to the State Board of Forestry's rejection of Interior's proposals and requested the Governor to personally review the situation facing the Park. No response from the Governor appears in the instant record.

On April 7, 1976, Interior, which is required to conduct litigation through the Justice Department, also recommended to Justice that litigation be commenced against the involved timber companies in an attempt to restrain peripheral timber practices which imminently endanger the Park; such request is still under consideration by Justice.

*Conclusions*

It should be recalled that, as stated in this court's order of July 16, 1975, the legislative history of the Redwood Park Act of 1968 shows that the present boundaries of the Park were the result of a political compromise—to the extent that they did not include certain lands within the Redwood Creek watershed upslope and upstream from the southernmost portion of the Park. The exclusion of these peripheral lands left it likely that private timber operations thereon would cause damage within the Park; apparently, it was for this reason that the Congress sought to offset that likelihood by putting into the Act provisions imposing special powers and duties on Interior designed to protect the Park—without, however, (as will hereinafter appear) providing Interior with sufficient additional powers and funds to do so.

Since the Redwood Park Act (16 U.S.C. § 79c(b)(2)) obligated the United States to pay just compensation for private lands actually taken for the Park as presently bounded, Congress originally authorized (16 U.S.C. § 79f) $92 million for the land acquisition necessary to create the Park—$72 million of which has actually been appropriated and the balance of $20 million which has been authorized but not yet appropriated.

However $117 million has already been expended in compensation for lands taken for the Park and, at least, $40 million of

compensation claims therefor are still outstanding—a total of $157 million—far in excess of the entire Congressional authorization.

It thus appears that all presently authorized funds have been in effect committed for compensation for lands already taken for the Park—leaving nothing for the acquisition of new additional land interests or other protective expenditures.

We, therefore, agree with Interior's position and find that none of the presently authorized funds are available for those purposes—certainly not without some indication or action of the Congress.

It should be further noted that, although Interior has not made any further formal requests to OMB since April 7, 1976 for approval of proposed legislation seeking either additional funds or new regulatory powers, it appears that any such requests would be futile in view of OMB's refusals of previous such requests, and, more importantly, Interior is not mandated by any existing law to make any such requests.[2]

From the foregoing record and report the court finds and concludes, as has been admitted by plaintiff herein, that the Department of the Interior has now in good faith and to the best of its ability attempted to exercise those powers and to perform those duties as far as possible within the limits of powers and funds provided by the Congress.

The court further finds that, in order adequately to exercise its powers and perform its duties in a manner adequately to protect the Park, Interior now stands in need of new Congressional legislation and/or new Congressional appropriations.

It follows that primary responsibility for the protection of the Park rests, no longer upon Interior, but squarely upon Congress to decide whether and, if so, when, how and to what extent new legislation should be passed to provide additional regulatory powers or funds for protection of the Redwood National Park.

To a lesser extent—some responsibility rests upon the Executive, acting through the President's Office of Management and Budget, to decide whether and to what extent it will make recommendations to the Congress for such new legislation and/or additional funds; also it is up to the Executive to decide whether litigation should be commenced through the Department of Justice against the timber owners. Such recommendations are obviously desirable—but they are not matters mandated by existing law.

Such decisions of the Congress and/or the Executive concerning further, future, additional legislation, funds or litigation, involve new policy-making which is the exclusive function of the Congress and the Executive under the doctrine of separation of powers.

It is beyond the province of this court to say whether and, if so, to what extent the Congress or Executive should act—much less to order such action. All that this court can do, and now has done, is to make sure that Interior has taken all reasonable steps toward the exercise of its statutory powers and performance of its duties within the limits of existing law and available funds.

Any further orders of this court, designed to mandate the Congress or the Executive to act to provide new legislation, new funds or new litigation, no matter how well intended by the court or how desirable for the protection of the Park, would be an extrajudicial and, therefore, futile injection of this court into the prerogatives of the Congress and the Executive.

For the foregoing reasons, Interior (i. e., the named defendants in this action) is hereby purged of its previously found failure to take steps to exercise and perform duties imposed by 16 U.S.C. § 1 et seq., and

---

2. The directive of this court to Interior (mentioned in our order of 7/16/75) to resort to the Congress, if reasonably necessary, for further authorization or appropriations, was ordered, not because such resort was mandated by existing law, but only to assure that Interior had gone as far as it legally or practically can go in an attempt to exercise its powers and perform its duties under existing law.

16 U.S.C. § 79a, et seq., (as found in an order of July 16, 1975), and is hereby discharged from further obligation to comply with or further report upon our directives in that order, insofar as such compliance or reporting involves new, additional legislation, funds or litigation.

This court's order of July 16, 1975, and the formal judgment of May 19, 1976, will stand—as modified, however, by this order, and this order, incorporating those previous orders, as modified, shall be deemed the final judgment of this court.

Also, for the reasons hereinabove set forth, plaintiff's recent and still pending motion for joinder of the President's Office of Management and Budget as a party to this action and/or for an order requiring that office to show cause why its decisions thus far made should not be held in contempt, is hereby denied.