**SIERRA CLUB, Plaintiff,**

v.

**Cecil D. ANDRUS et al., Defendants.**

**Civ. A. No. 78–2213.**

United States District Court, District of Columbia.

March 21, 1980.

H. Anthony Ruckel, Denver, Colo., James H. Cohen, Washington, D. C., for plaintiff.

Margaret M. McMahon, Dept. of Justice, Washington, D. C., for Government defendants.

Maxwell A. Miller, James G. Watt, Denver, Colo., James R. Richards, Washington, D. C., for intervenors-defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

This case is before the Court on defendants' motion for summary judgment or to dismiss, and plaintiff's motion for summary judgment. Since there is no genuine dispute as to the facts material to the disposition of this case, summary judgment is appropriate. For the reasons more fully set forth below, the Court grants summary judgment to defendants on the first, third and fifth claims of plaintiff's complaint. In addition, the Court grants defendants' motion to dismiss as to the second and fourth claims of plaintiff's complaint because of failure to state claims upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

Plaintiff Sierra Club is a non-profit corporation organized under the laws of the State of California with its principal place of business in San Francisco, California. Sierra Club is a national conservation organization having approximately 180,000 members.

Defendant Cecil Andrus is Secretary of the Department of the Interior ("the Secretary"). He is responsible for management of the National Park Service as well as the Bureau of Land Management. The remaining defendants are officials of the Department of the Interior, the National Park Service and the Bureau of Land Management. In addition on February 22, 1979, the Court granted the Mountain States Le-

gal Foundation leave to intervene as a party defendant in this action.[1]

Plaintiff alleges that defendants have failed to carry out statutory obligations with which they are charged pursuant to the National Park Service Organic Act of 1916, as amended, 16 U.S.C. § 1 *et seq.* (1976); the Grand Canyon National Park Act of 1919, as amended, 16 U.S.C. § 221 *et seq.* (1976); the Glen Canyon National Recreational Area Act of 1972, as amended, 16 U.S.C. § 460dd *et seq.* (1976); and the Federal Lands Policy and Management Act of 1976, as amended, 43 U.S.C.A. § 1701 *et seq.* (West Supp.1979). In addition, plaintiff claims that defendants have failed to carry out trust obligations with which they are charged pursuant to the statutes enumerated above. Finally, plaintiff asserts that defendants' failure to carry out their statutory and trust obligations is arbitrary and capricious and unlawfully withholds agency action.

The alleged statutory and trust violations are claimed to have occurred as a result of the defendants' refusal and failure 1) to determine and define federal reserved water rights in certain water courses for the purposes enumerated in the statutes listed above, 2) to assert such rights where and when necessary to assure their protection, and 3) to protect and defend such rights from potentially adverse activities and rulings.

Plaintiff requests declaratory and injunctive relief in this action. Specifically, plaintiff seeks 1) a judgment ordering defendants to define, assert and protect federal reserved water rights in certain water courses in southern Utah and northern Arizona, and 2) a declaration by the Court that federal reserved water rights do, in fact, exist in these water courses. However, due to the nature of the Court's resolution of the other issues arising from plaintiff's claims, the Court finds it unnecessary to determine the exact scope of the federal reserved water rights allegedly existing in the water courses referred to above. The Court will set forth background information relevant to the disposition of this case and then proceed to consider plaintiff's claims.

## II. BACKGROUND

Plaintiff claims that federal reserved water rights exist in four water courses in southern Utah and northern Arizona. These water courses are 1) The Escalante River, 2) the Paria River, 3) Kanab Creek, and 4) Johnson Wash ("the subject water courses"). It is alleged that federal reserved water rights arose in these water courses by virtue of the federal reservations of Grand Canyon National Park, Glen Canyon National Recreation Area, and Bureau of Land Management lands.

Plaintiff further contends that the alleged federal reserved water rights are subject to a serious and "immediate" threat of harm engendered by energy-related developments in the relevant geographic area. Specifically, plaintiff claims the following "energy projects" "may" have an impact on federal reserved water rights in the subject water courses:

1. Allen-Warner Valley Power Project, including the Alton Mine and proposed coal slurry;

2. Escalante Power Project;

3. Garfield Power Plant of Garkane Power Association;

4. Intermountain Power Project;

5. Kaiparowits Plateau Mines, Nos. 1–5;

6. Kaiparowits Plateau Red and Blue Mines, including proposed coal slurry mines;

7. Successor projects to Kaiparowits Power Project;

8. Utah Power and Light Garfield Generating Station; and

9. other preliminary mining proposals.

It is clear from the record that the sponsors of several of these proposed "energy

---

1. Intervenor-defendant filed a motion for summary judgment on July 13, 1979, which is also before the Court.

developments" have applied to the Utah State Engineer for water rights within the Escalante and Paria Rivers and Kanab Creek basins. On April 3, 1957, the Utah State Engineer filed a petition requesting the Sixth Judicial District Court in and for Wayne County, Utah to authorize and direct a general adjudication on, *inter alia*, the Escalante and Paria Rivers and Kanab Creek. The court granted the State Engineer's petition. The rights to be determined in the Utah proceeding are 1) diligence rights, initiated by beneficial use of water prior to 1903 from surface sources, or prior to March 22, 1935, for underground sources, and 2) rights by application to the State Engineer.

The United States is not a party to the Utah proceeding. The State of Utah has made no effort to join the United States pursuant to the McCarran Act, 43 U.S.C. § 666 (1976).[2] At present, the United States does not intend to join the Utah proceeding. This is because it is the policy of the Department of the Interior and the Department of Justice that the United States does not participate in state administrative water rights adjudications unless it is formally served pursuant to the provisions of the McCarran Act.

On July 12, 1978, President Carter directed[3] federal agencies which manage lands carrying federal reserved water rights to take action by June 6, 1979, to:

Increase the level and quality of your attention to the identification of Federal reserved water rights. Focus particularly on areas where water planning and man-

agement will be improved, where the protection of Federal water uses is of highest importance, and where it is essential to reduce uncertainty over future Federal assertions of right.

Seek an expeditious establishment and quantification of Federal reserved water rights consistent with the priorities set out above. This action should be accomplished primarily through administrative means, seeking formal adjudication only where necessary. Resolution of disputes involving Federal water rights shall include a willingness to negotiate and settle such rights in an orderly and final manner, seeking a balance with conflicting and established water uses. Where adjudication is necessary, it shall be actively pursued by the agency to a speedy resolution.

Utilize a reasonable standard when asserting Federal reserved rights which reflect true Federal needs, rather than theoretical and hypothetical needs based on the full legal extension of all possible rights. In consultation with the Department of Justice, each of you shall develop procedures and standards for the purpose of implementing these directives. These procedures and standards shall be developed by June 6, 1979.

This memorandum directed implementation of the following part of the President's water policy, announced on June 6, 1978:

States must be the focal point for water resources management. These water reforms are based on this guiding principle.

2. The McCarran Act, 43 U.S.C. § 666 (1976) provides in pertinent part:

(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not

amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided*, That no judgment for costs shall be entered against the United States in any such suit.

(b) Summons or other process in any such suit shall be served upon the Attorney General or his designated representative.

3. *See* Affidavit of Gary Fisher, Exhibit 1 to Defendants' Motion for Summary Judgment or to Dismiss, filed July 16, 1979.

Therefore, I am taking several initiatives to strengthen federal-state relations in the water policy area and to develop a new, creative partnership . . . . [T]he actions I am taking include:

. . . . .

an instruction to federal agencies to work promptly and expeditiously to inventory and quantify federal reserved and Indian water rights. In several areas of the country, states have been unable to allocate water because these rights have not been determined. This quantification effort should focus first on high priority areas, should involve close consultation with the states and water users and should emphasize negotiations rather than litigation wherever possible.

*See* 14 Weekly Comp. of Pres.Doc. 1044, 1049–50 (June 6, 1978).

Pursuant to the President's memorandum of July 12, 1978, the Interagency Task Force on Federal Non-Indian Reserved Water Rights ("Task Force") was created to *organize and coordinate implementation of* the announced water policy. The Task Force was organized in late August, 1978, with leadership delegated to the Solicitor of the Department of the Interior. The Task Force consisted of representatives from 1) the Department of the Interior, representing the Bureau of Reclamation, Bureau of Land Management, National Park Service, and Fish and Wildlife Service; 2) the Department of Agriculture, representing the Forest Service; 3) the Department of Defense, representing the U. S. Army Corps of Engineers, Navy and Air Force; 4) the Department of Energy; and 5) the Department of Justice. Each of the agencies was represented on the Task Force by individuals with legal and technical backgrounds in the reserved water rights area.

The Task Force issued its final draft report on June 15, 1979.[4] The report entails a series of policy recommendations designed to provide for the systematic and orderly quantification of all water rights of the

federal government with minimal resort to litigation. The federal agencies, pursuant to the recommendation of the report, are in the process of establishing priority areas, principles and standards for quantification of their respective water rights. It should be noted that the Task Force centered its inquiry on the western states because the impact of federal reserved water rights in those areas presented, in their judgment, the most pressing problems.

## III.  THE NATURE OF DEFENDANTS' DUTIES AND OBLIGATIONS

### A.  *Statutory Duties*

The National Park Service Organic Act of 1916, 16 U.S.C. § 1 (1976), provides that defendants are under a statutory duty to:

promote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified, . . . by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of same in such manner as will leave them unimpaired for the enjoyment of future generations.

In the following provision, Congress reasserted the statutory standards for managing the National Park System:

[T]he first section of the Act of August 18, 1970 (84 Stat. 825), is amended by adding the following "Congress further reaffirms, declares and directs that the promotion and regulation of the various areas of the National Park System, as defined in section 2 of this Act, shall be consistent with and found in the purpose of the Act of August 25, 1916, to the common benefit of all people of the United States. The authorization of activities shall be construed and the protection, management and administration of these

4. Attachment to Exhibit 1, Defendants' Motion for Summary Judgment or to Dismiss, filed July 16, 1979.

areas shall be conducted in light of the high public value and integrity of the National Park System and shall not be exercised in derogation of the values and purposes for which these areas have been established, except as may have been or shall be directly and specifically provided by Congress."

Section 101(b) of the Act of March 27, 1978, P.L. 95–250, 92 Stat. 166 (to be codified at 16 U.S.C. § 1a–1). Defendants concede that under this language, "The Secretary has an absolute duty, which is not to be compromised, to fulfill the mandate of the 1916 Act to take whatever actions and seek whatever relief as will safeguard the units of the National Park System." *Senate Report 95–528*, 95th Cong., 1st Sess., 9 (October 21, 1977); *see also House Report 95–581*, 95th Cong., 1st Sess., 21 (August 5, 1977), U.S.Code Cong. & Admin.News, p. 463. Sections 222 and 460dd–3 of title 16 United States Code specifically direct that the statutory standards enunciated in 16 U.S.C. § 1 be applied in the administration and protection of the Grand Canyon National Park and the Glen Canyon National Recreation Area, respectively.

■ Thus, it seems clear that in the event of a real and immediate water supply threat to the scenic, natural, historic or biotic resource values of the Glen Canyon National Recreation Area or the Grand Canyon National Park, the Secretary must take appropriate action. However, nowhere in either 16 U.S.C. §§ 1 or 1a–1 is there a specific direction as to how the

protection of Park resources and their federal administration is to be effected. Certainly the Secretary is not restricted in the protection and administration of Park resources to any single means. The Court concludes that defendants have broad discretion in determining what actions are best calculated to protect Park resources, including Glen Canyon National Recreation Area and Grand Canyon National Park. Such actions may include, but are not limited to: 1) asserting reserved water rights, 2) acquiring water rights and rights-of-way, 16 U.S.C. § 17j–2 (1976), 3) denying the land exchanges and rights-of-way which may constitute or aid a threat to Park resources, 43 U.S.C.A. §§ 1716, 1761, 1765 (West Supp. 1979), or 4) bringing trespass or nuisance actions if appropriate.

The Court also concludes that the Federal Lands Policy and Management Act, 43 U.S. C.A. §§ 1701, 1782(c) (West Supp.1979),[5] creates similar duties and entails comparable discretion, as that described above, for the management and protection of public and Bureau of Land Management Lands.

■ The discretion accorded the Secretary in discharging his duty of managing and protecting Park and Bureau of Land Management resources is not unlimited however. When Congress provided that the protection, management and administration of National Park resources "shall not be exercised in derogation of the values and purposes for which these various areas have been established . . .", it clearly set some limit on the Secretary's discretion in

---

5. 43 U.S.C.A. § 1701 (West Supp.1979) provides in pertinent part:

(a) The Congress declares that it is the policy of the United States that—

.     .     .     .     .

(8) the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resources, and archeological values; that where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use.

43 U.S.C.A. § 1782(c) (West Supp.1979), addressing Bureau of Land Management lands subject to review and designation as wilderness, provides:

During the period of review of such areas and until Congress has determined otherwise, the Secretary shall continue to manage such lands according to his authority under this Act and other applicable law in a manner so as not to impair the suitability of such areas for preservation as wilderness, . . . . Provided, That, in managing the public lands the Secretary shall by regulation or otherwise take any action required to prevent unnecessary or undue degradation of the lands and other resources or to afford environmental protection.

discharging his statutory duties. 16 U.S.C.A. § 1a–1 (West Supp.1979). Likewise, 43 U.S.C. §§ 1701 and 1782(c) (West Supp. 1979) do not confer absolute discretion upon the Secretary in carrying out his statutory obligations with regard to Bureau of Land Management resources. The language used and the inclusion of provisos in these provisions [6] indicate a congressional intent to set some limit on the Secretary's discretion. *See e. g., County of Trinity v. Andrus*, 438 F.Supp. 1368, 1377–78 (E.D.Cal.1977). Here, as was found in *County of Trinity*, the respective provisos and conditions would be meaningless if they did not limit the Secretary's discretion in following the general operational directive to manage, protect, and administer the relevant resources in accordance with enunciated statutory standards. Thus, while the protection, management and administration of National Park and Bureau of Land Management resources require the exercise of broad discretion, such discretion is not unlimited.

### B. *Trust Duties*

Plaintiff asserts that in addition to the statutory duties discussed above, defendants hold National Park and Bureau of Land Management resources in trust for the public and, therefore, are charged with the duties and obligations of a trustee.[7] To the extent that plaintiff's argument advances the proposition that defendants are charged with "trust" duties distinguishable from their statutory duties, the Court disagrees. Rather, the Court views the statutory duties previously discussed as comprising *all* the responsibilities which defendants must faithfully discharge.

The legislative history of the 1978 amendment to 16 U.S.C. § 1a–1 makes clear that any distinction between "trust" and "statutory" responsibilities in the management of the National Park System is unfounded.

Moreover, Congress specifically addressed the authority upon which plaintiff relies to support its "trust theory"[8]:

> The committee has been concerned that litigation with regard to Redwood National Park and other areas of the system may have *blurred the responsibilities* articulated by the 1916 Act creating the National Park service . . . .
>
> [T]he committee strongly endorses the Administration's proposed amendment to the Act of August 18, 1970, concerning the management of the National Park System *to refocus and insure the basis for decisionmaking concerning the system continues to be the criteria provided by 16 U.S.C. § 1 . . . . This restatement of these highest principles of management is also intended to serve as the basis for any judicial resolution of competing private and public values and interest in . . . areas of the National Park System.*

*Senate Report 95–528, supra*, at 14, 7–8 (emphasis added). By asserting an explicit statutory standard "as the basis of any judicial resolution" of Park management issues, Congress eliminated "trust" notions in National Park System management. The Court also concludes that §§ 1701 and 1782(c) of title 43 United States Code embody the entire duty and responsibility to manage and protect Bureau of Land Management lands generally with which the Secretary is charged.

In accordance with the foregoing, defendants' motion to dismiss is granted as to the second and fourth claims of plaintiff's complaint which allege violation of trust duties, because of failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### IV. DISCUSSION

The Court now considers whether the Secretary's decision not to assert feder-

---

6. *Id.*

7. *See* the second and fourth claims of plaintiff's complaint, filed November 22, 1978.

8. Plaintiff relies on three cases involving Redwood National Park: *Sierra Club v. Depart-*

*ment of Interior*, 376 F.Supp. 90 (N.D.Cal.1974) (*Redwood I*); *Sierra Club v. Department of Interior*, 398 F.Supp. 284 (N.D.Cal.1975) (*Redwood II*); and *Sierra Club v. Department of Interior*, 424 F.Supp. 172 (N.D.Cal.1976) (*Redwood III*).

al reserved water rights at this time is arbitrary, capricious, an abuse of discretion accorded him by the applicable statutes or an unlawful withholding of agency action. The standard of review is a highly deferential standard which presumes agency action to be valid, forbids a court's substituting its judgment for that of the agency, and requires affirmance if a rational basis exists for the agency's decision. *Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1 (D.C. Cir. 1976); *Natural Resources Defense Council, Inc. v. S. E. C.*, 606 F.2d 1031 (D.C. Cir. 1979).

Plaintiff seeks a determination by the Court that the Department of Interior's decision not to voluntarily join litigation concerning water rights in the subject water courses is arbitrary, capricious, an abuse of discretion and unlawfully withholds agency action. Essentially, plaintiff asserts that the alleged federal reserved water rights in the subject water courses will be harmed or lost unless the United States voluntarily joins the water rights litigation now pending in the Sixth Judicial District Court in and for Wayne County, Utah. Only by such action, plaintiff argues, can the United States protect its rights from the serious and "immediate" threat posed by the proposed energy developments in the relevant geographic area. Plaintiff's argument is unpersuasive.

The Court finds that defendants' decision to refrain from litigation over the alleged federal reserved water rights at this time has a rational basis for the following reasons: 1) federal reserved water rights, by their very nature, cannot be lost or harmed by non-assertion at this time; 2) none of the sponsors of the proposed energy developments in the relevant area have acquired vested water rights in the subject water courses; and 3) the ultimate relief which plaintiff seeks, identification and quantification of the alleged federal reserved water rights, is currently being attained through other administrative means. Accordingly, summary judgment is granted to defendants and intervenor-defendants on the first, third and fifth claims of plaintiff's complaint and this action is dismissed.

### A. Federal Reserved Water Rights are not Lost or Harmed by Non-Assertion at this Time.

█ The federal reserved water rights doctrine has been described as follows:

This Court has long held that when the Federal Government withdraws its lands from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing the United States acquires a reserved water right in the unappropriated water which vests on the date of the reservation and is superior to the rights of future appropriators. Reservation of water is empowered by the Commerce Clause, Art. I, § 8, which permits federal regulation of navigable streams, and the Property Clause, Art. IV, § 3, which permits federal regulation of federal lands. The doctrine applies to Indian reservations and other federal enclaves, encompassing water rights in navigable and non-navigable streams.

*Cappaert v. United States*, 426 U.S. 128, 138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523 (1976) (citations omitted). Thus, the priority date of the federal reserved water right, for purposes of determining seniority of water rights relative to those obtained under state law, is the date of the federal reservation, or the date a new purpose was created for the reservation. The federal reserved water right is "perfected" as of that date and is superior to any and all rights of future appropriators. *Arizona v. California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963). Indeed, even where there has been substantial appropriation by "junior" appropriators, the rights of the United States remain senior and unimpaired. Further, it is immaterial whether or not private appropriators have knowledge of the federal reserved water rights. *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908); *Cappaert v. United States, supra.*

Plaintiff's argument is that the federal reserved water rights it claims exist in the subject water courses will somehow be lost or impaired unless the United States defends them by joining the Utah proceeding. Clearly, this argument cannot withstand close scrutiny.

As seen above, federal reserved water rights are unaffected by later appropriators. The subject water courses pass through Glen Canyon National Recreation Area, established in 1972, and a portion of the Grand Canyon National Park, established in 1975. As a matter of law, all unappropriated waters on the subject water courses as of these dates were made fully available to fulfill the needs and purposes of these federal reservations. Any later appropriators of these waters are "junior" appropriators whose water rights are subjugated to the federal reserved water rights. Any prior appropriator, who perfected its rights according to applicable state law, holds rights senior to the federal rights. The record discloses no "energy development" interest which holds perfected water rights in the subject water courses. If a junior appropriator subsequently perfects its water rights on the subject water courses, the United States, if necessary, may adequately defend its rights at that time.

■ Moreover, it is absolutely clear that the United States is not bound by earlier state court decrees establishing relative priorities of water rights if the United States is not a party to those proceedings. *United States v. District Court for Eagle County*, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Thus, unless the United States voluntarily joins the Utah proceeding or is joined pursuant to the McCarran Act, 43 U.S.C. § 666 (1976), the proceeding cannot have any legal effect upon the federal reserved water rights which plaintiff allege exist in the subject water courses. Consequently, the very foundation of plaintiff's claim in this action, that federal reserved water rights in the

subject water courses will be lost or harmed unless the United States joins the Utah proceeding or otherwise asserts its rights immediately, is unsupportable.

B. *The Proposed Energy Developments Do Not Pose an "Immediate" Threat to Either the Alleged Federal Reserved Water Rights or the Subject Water Courses.*

■ It is clear that the sponsors of several of the proposed energy developments enumerated above have applied for water rights in the subject water courses. It is equally clear that under Utah law, no vested water right is created merely by the filing of an application. *Sowards v. Meagher*, 37 Utah 212, 108 P. 1112 (1910); Utah Code Ann. § 73–3–2 (1953). A vested or "perfected" right attaches only by approval of the application by the State Engineer and beneficial use of the water, Utah Code Ann. §§ 73–3–10, 16, 17 (1953).

The record discloses no proposed energy development interest which holds vested or perfected water rights in the subject water courses. Given this undisputed fact, the Court fails to perceive how the proposed energy developments can pose an "immediate" threat to the alleged federal reserved water rights. If the energy interests subsequently perfect water rights in the subject water courses, such rights would clearly be junior to any federal reserved rights therein. Furthermore, plaintiff has not persuasively shown that the proposed energy developments will acquire rights *senior* to the alleged federal rights, by assignment or otherwise, and the Court will not speculate regarding whether such rights could be so acquired. In sum, the proposed energy developments with which plaintiff is concerned do not pose an immediate threat to any federal reserved water rights or the subject water courses because they hold no legally-cognizable water rights therein.

C. *The Ultimate Relief which Plaintiff Seeks is Being Attained Through Means Other Than Adjudication.*

Plaintiff seeks to compel the Department of the Interior to quantify and assert feder-

al reserved water rights in the subject water courses in order to protect 1) the federal rights themselves; 2) the subject water courses; and 3) water-dependent resources of the National Park System and the Bureau of Land Management. However, the very action which plaintiff seeks to compel is presently underway through implementation of President Carter's water policy.[9]

The Task Force has undertaken the implementation of the President's water policy with the belief that a comprehensive and systematic effort by federal agencies to identify and quantify their water rights is the best way to concentrate federal efforts.[10] Pursuant to the Task Force Report of June 15, 1979,[11] federal agencies, including the Department of the Interior, are in the process of establishing priority areas,[12] principles and standards for the identification and quantification of federal reserved water rights. Unlike the relief requested by plaintiff, this process involves cooperation with the states and emphasizes negotiation rather than adjudication. Such action is entirely consistent with the President's water policy. The result of the agencies' identification and quantification of federal reserved water rights will be notice to the states of the federal rights to be registered in state systems. The Court concludes that in the context of the instant case, it would be a duplication of costs and effort for the United States to enter formal adjudication of the alleged federal reserved water rights while these very rights, if any, are being identified and quantified by the Department of the Interior.

### V. CONCLUSION

The Court concludes that the Secretary's decision to refrain from litigation over the alleged federal reserved water rights in the subject water courses has a rational basis. Given the nature of federal reserved water rights, the lack of any conflicting vested rights held by "energy development" interests, and the identification and quantification of federal water rights presently underway, the Secretary's decision cannot be said to be arbitrary, capricious, an abuse of discretion or an unlawful withholding of agency action. Indeed, the decision is supported by the discretion accorded the Secretary by applicable statutes and is not in violation of the Secretary's duties established therein. An order in accordance with the foregoing shall be issued of even date herewith.

---

9. *See* pp. 446 & 447, *supra.*

10. N.4, *supra*, at 19.

11. N.4, *supra.*

12. The Court notes that the priorities for the Bureau of Land Management include the Escalante River, one of the subject water courses. *Id.* at 35.