**SIERRA CLUB, a Non-Profit California Corporation, Appellant,**

v.

**James WATT, Individually and as Secretary of the Interior, et al.**

**No. 80–1674.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 27, 1981.

Decided July 7, 1981.

H. Anthony Ruckel, Denver, Colo., with whom Karin P. Sheldon, Washington, D. C., was on the brief for appellant.

Jerry Jackson, Atty., Dept. of Justice, Washington, D. C., for appellees. Sanford Sagalkin, Acting Asst. Atty. Gen., Peter R. Steenland, Jr., Raymond N. Zazone, Margaret M. McMahon, Anne S. Almy and Joshua I. Schwartz, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellees Watt, individually and as Secretary of the Interior, et al.

Maxwell A. Miller, Denver, Colo., with whom James R. Richards, Washington, D. C., was on the brief for appellee Mountain States Legal Foundation.

Before MacKINNON and EDWARDS, Circuit Judges and DAVIES,* United States Senior District Judge for the District of North Dakota.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

The Sierra Club brought this action in the district court seeking a declaration of the extent of federal reserved water rights in four water courses in southern Utah and northern Arizona,[1] and to require officials of the Interior Department to assert and protect those rights. The Sierra Club claimed that the water requirements of a number of proposed energy projects would jeopardize the federal water rights unless the federal officials took steps to protect them. The Sierra Club alleged that the federal defendants had failed to carry out statutory obligations mandated by a number of congressional enactments, including the Federal Land Policy and Management Act of 1976 (the Lands Policy Act), 43 U.S.C. § 1701 *et seq.* In addition, it was claimed that the defendants had not fulfilled their trust obligations that emanated from the same statutes.

On cross-motions for summary judgment, the district court held

that in the event of a real and immediate water supply threat to the scenic, natural, historic or biotic resource values of the Glen Canyon National Recreation Area or the Grand Canyon National Park, the Secretary [of the Interior] must take appropriate action.

*Sierra Club v. Andrus,* 487 F.Supp. 443, 448 (D.D.C.1980). The court discerned this obligation from the applicable statutes and rejected plaintiff's contention that further duties were placed upon the Interior officials from a "trust" obligation. The court considered "the statutory duties ... as comprising *all* the responsibilities which defendants must faithfully discharge." 487 F.Supp. at 449 (emphasis in original).

The allocation of water rights for the subject watercourses is the subject matter of an ongoing lawsuit in a Utah state court, *In re General Determination of Water Rights,* Civ. No. 435 (Utah 6th D.Ct. filed Apr. 3, 1957). At the time the district court decided this case, the United States had not been made a party to the Utah proceeding, even though Congress, in the McCarran Act, has waived sovereign immunity and explicitly authorized the joinder of the federal government in state water rights adjudications. *See* 43 U.S.C. § 666. The district court placed great emphasis on this fact, reasoning that whatever reserved water rights the federal government possessed could not be affected by the Utah proceeding because the United States was not a party. The court concluded:

Thus, unless the United States voluntarily joins the Utah proceeding or is joined

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The water courses are the Escalante River, the Paria River, the Kanab Creek, and the Johnson Wash. The Sierra Club on this appeal seeks only to establish federal reserved rights in the waters of the Escalante and Paria Rivers. *See* Brief of Sierra Club at 49.

pursuant to the McCarran Act, ... the proceeding cannot have any legal effect upon the federal reserved water rights which plaintiff alleges exist in the subject water courses. Consequently, the very foundation of plaintiff's claim in this action, that federal reserved water rights in the subject water courses will be lost or harmed unless the United States joins the Utah proceeding or otherwise asserts its rights immediately, is unsupportable.

487 F.Supp. at 451. Determining that the proposed energy projects did not pose an "immediate" threat to federal water rights, the district court granted summary judgment for the federal defendants, without deciding the express contours of federal water rights in the four watercourses in issue.

The Sierra Club took a narrow appeal from the district court's judgment, appealing "only that part of the decision of the District Court declining to rule upon the question whether FLPMA [the Land Policy Act] confers by implication federal reserved water rights in waters appurtenant to lands managed by the Bureau of Land Management." Brief of Sierra Club at 4.

Shortly before oral argument in this court, the Sierra Club informed the panel that the United States had been made a party to the Utah proceeding. The Sierra Club correspondingly moved to amend its request for relief to include a prayer for an order directing the United States to assert its federal water rights reserved under the Land Policy Act in the Utah proceeding. This court granted the motion to amend the prayer for relief.

Although questions remain concerning whether the addition of the United States to the Utah proceeding gives this case the necessary concreteness to ensure justiciability and concerning the propriety of a court order directing the United States to assume a particular posture in pending litigation, we nevertheless rule on the merits of the issue raised by the Sierra Club, since we find it totally without merit.

■ The Supreme Court has described the federal reserved water rights doctrine as follows:

[W]hen the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing the United States acquires a reserved right in unappropriated water which vests on the date of the reservation and is superior to the rights of future appropriators.

*Cappaert v. United States,* 426 U.S. 128, 138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523 (1976). *Cf. United States v. New Mexico,* 438 U.S. 696, 702, 98 S.Ct. 3012, 3015, 57 L.Ed.2d 1052 (1978) (United States obtains those reserved rights "necessary to fulfill the very purposes for which a federal reservation was created .... Where water is only valuable for a secondary use of the reservation, however, ... the United States [must] acquire water in the same manner as any other public or private appropriator.") We must look to the Land Policy Act to determine whether Congress thereby withdrew land from the public domain and reserved it for a federal purpose.

The Land Policy Act can be described as the "organic" act for those lands administered by the Bureau of Land Management (BLM). The purpose of the Land Policy Act was to

provide the first comprehensive, statutory statement of purposes, goals, and authority for the use and management of about 448 million acres of federally-owned lands administered by the Secretary of the Interior through the Bureau of Land Management.

These lands—designated as ["public lands"]—constitute the largest system of Federal lands—comprising 20 percent of America's land base and 60 percent of all federally-owned property. Over the years, the Congress has established statutory bases for the management of other, smaller Federal land systems: the National Forest, National Park, and National Wildlife Refuge Systems. No similar legislative foundation exists for the [public lands].

S.Rep.No.583, 94th Cong., 1st Sess. 24 (1975), U.S.Code Cong. and Admin.News 1976, p. 6175.

■ Appellant's argument fails because the lands administered by the BLM—and thus affected by the Land Policy Act—constitute the public domain. Congress did not "withdraw land from the public domain"[2] when it passed the Lands Policy Act, it merely set forth "purposes, goals and authority for the use" of the public domain.[3] Thus, no water rights were reserved by the mere fact of the Act's passage. We are in substantial agreement with the argument submitted by the Government:

> Under the controlling decisions of the Supreme Court, the distinction between reservation and unreserved public lands is fundamental. Reserved rights attach only to the former, and then only when water is necessary to fulfill the primary purpose of the reservation. No water is reserved for uses that are merely permissive upon a reservation. A fortiori, then, no reserved rights arise under [the Land Policy Act], for no reservation of land is effected.

Government's Brief at 38.

We are also persuaded that a specific provision of the Land Policy Act precludes the construction that the Act effects a reservation of water rights. One of the savings provisions of the Act provides:

> (g) Nothing in this Act shall be construed as limiting or restricting the power and authority of the United States or—
>
> > (1) as affecting in any way any law governing appropriation or use of, or Federal right to, water on public lands;
> > (2) as expanding or diminishing Federal or State jurisdiction, responsibility, interests, or rights in water resources development or control . . . .

43 U.S.C. § 1701 (note) (emphasis added). We interpret the italicized portions of the

statute to mean that no federal water rights were reserved when Congress passed the Land Policy Act. See Federal Water Rights of the National Park Service, Fish and Wildlife Service, Bureau of Reclamation and the Bureau of Land Management, 86 Interior Dec. 553, 594 (1979) (Opinion of the Solicitor).

Therefore, relying on the controlling principles that govern the federal reserved water rights doctrine and the express language of the savings provision in the Land Policy Act, we reject the argument of the Sierra Club.

We accordingly rule that the district court did not err when it declined to decide whether the Land Policy Act implicitly conferred federal reserved water rights in waters appurtenant to land managed by the BLM.

*Judgment accordingly.*

---

2. *Cappaert v. United States*, 426 U.S. at 138, 96 S.Ct. at 2069.

3. Indeed, the Land Policy Act contains an express provision by which BLM lands can be withdrawn, 43 U.S.C. § 1714. The BLM lands appurtenant to the water courses in issue have apparently not been withdrawn pursuant to

this provision. We do not now decide whether a withdrawal pursuant to § 1714 might result in federal reserved water rights. The presence of an express withdrawal procedure in the Land Policy Act substantially bolsters the view that the passage of that Act alone did not result in a reservation of water rights.