FRIENDS OF THE SHAWANGUNKS, INC., Sarah L. Johnston, John Johnsen, Keith La Budde and Frank Wright, Plaintiffs,

v.

William CLARK, Secretary, United States Department of the Interior, Russel E. Dickenson, Director, National Park Service, James W. Coleman, Jr., Regional Director, National Park Service, Mid-Atlantic Region, Don H. Castleberry, Deputy Regional Director, National Park Service, Mid-Atlantic Region and Marriott Corporation, Defendants.

No. 82–CV–179.

United States District Court, N.D. New York.

April 2, 1984.

Whiteman, Osterman & Hanna, Albany, N.Y., for plaintiffs; Philip H. Gitlen, Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Albany, N.Y., for defendants U.S.; William P. Fanciullo, Asst. U.S. Atty., Albany, N.Y., of counsel.

Miller, Mannix, Lemery & Kafin, P.C., Glens Falls, N.Y., for defendant Marriott Corp.; Benjamin R. Pratt, Jr., Glens Falls, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

Plaintiffs, Friends of the Shawangunks, Inc. and four of its members, seek review by this Court of a determination made by the National Park Service of the United States Department of the Interior, contending that the federal defendants have not fulfilled their obligations under the Land and Water Conservation Fund Act of 1965, as amended, 16 U.S.C. §§ 460d, 460*l*-4—460*l*-11. Jurisdiction in this Court is asserted pursuant to the provisions of 28 U.S.C. §§ 1331 and 1361. Before the Court are motions by the federal defendants to dismiss the action for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), or for judgment on the pleadings, Fed.R.Civ.P. 12(c), by intervenor-defendant Marriott Corporation to dismiss, Fed.R.Civ.P. 12(b)(6), for judgment on the pleadings, Fed.R.Civ.P. 12(c), or for summary judgment, Fed.R.Civ.P. 56(b); and by plaintiffs for summary judgment, Fed.R.Civ.P. 56(a).

### II

Friends of the Shawangunks, Inc. is a not-for-profit corporation organized under the laws of New York State. It has approximately 600 members, and is devoted to ensuring the "preservation and prudent development of the Shawangunk Mountains in Ulster County, New York, as a national resource for all to enjoy." Complaint, ¶ 3. Named as defendants herein are William Clark,[1] Secretary of the Department of the Interior; Russel E. Dickenson, National Park Service Director; Don H. Castleberry, Deputy Regional Director, National Park Service; and the Marriott Corporation.[2] Although the facts surrounding this controversy already have been set out in this Court's Memorandum-Decision and Order of March 25, 1983,[3] they will, for the reader's benefit, be repeated here.

---

**1.** William Clark is substituted, *sua sponte*, for James Watt pursuant to the provisions of Fed.R.Civ.P. 25(d)(1).

**2.** By Order dated September 3, 1982, Marriott Corporation was granted leave to intervene as a party defendant. Fed.R.Civ.P. 24(a).

**3.** In its March 25, 1983 decision, the Court granted the federal defendants' motion to limit review of the Secretary's determination to the administrative record, and denied plaintiffs' motion to compel the National Park Service to designate an individual who could be deposed. 97 F.R.D. 663.

The Land and Water Conservation Fund Act of 1965, as amended, 16 U.S.C. §§ 460d, 460*l*-4—460*l*-11 (the "Act"), provides for matching grants from the federal government to the several states for the acquisition, development and general planning of public outdoor park and recreation facilities. In 1977, New York State acquired 1,370.49 acres in fee simple and 239.42 acres as a conservation easement contiguous to Minnewaska State Park in Ulster County. Federal matching funds of $542,375.00 were provided to New York for this acquisition.

Both the fee and the conservation easement were acquired by the Palisades Interstate Park Commission ("PIPC") from the now bankrupt Lake Minnewaska Mountain Houses, Inc. The present controversy concerns Marriott's proposed use of the lands subject to the easement only and does not concern the fee acquired by the PIPC.

The conservation easement was acquired by the PIPC

> for the purpose of, but not solely limited to, the conservation and preservation of unique and scenic areas; for the environmental and ecological protection of Lake Minnewaska and its watershed; and to prevent development and use in a manner inconsistent with the present use and operation of lands now owned and to be conveyed to [PIPC] and to be part of Minnewaska State Park ....

Restated and Amended Conservation Easement Agreement, Administrative Record (AR) at 328.

Subsequent to PIPC's acquisition of this conservation easement, Marriott has been negotiating with Lake Minnewaska Mountain Houses for the purchase of real property including Lake Minnewaska and the lands subject to the conservation easement. It is Marriott's desire to develop a resort facility by expanding the facilities now owned by Lake Minnewaska Houses. The proposed construction includes a 400 room hotel, 300 condominium units, restaurants, ski facilities, and an eighteen hole golf course to replace the existing nine hole golf course. The present controversy arises because eight of the additional nine holes for the golf course, as well as expanded support facilities including a club house and parking facilities, would be located on the lands subject to the easement.

In order for Marriott to undertake the proposed construction, it first was necessary for it to seek an amendment to the conservation easement. Although to date the easement has not been amended, on July 20, 1981 PIPC resolved to amend the easement to allow Marriott to expand the golf course, develop support facilities, increase utilization of water from Lake Minnewaska and provide public hiking trails in the easement area.

Section 6(f)(3) of the Act, 16 U.S.C. § 460 *l*-8(f)(3), provides in part:

> No property acquired or developed with assistance under this section shall, without the approval of the Secretary, be converted to other than public outdoor recreation uses. The Secretary shall approve such conversion only if he finds it to be in accord with the then existing comprehensive statewide outdoor recreation plan and only upon such conditions as he deems necessary to assure the substitution of other recreation properties of at least equal fair market value and of reasonably equivalent usefulness and location.

Implicit in this statutory provision, of course, is the necessity for a preliminary determination of whether a "conversion" will in fact occur. In this regard, Don H. Castleberry, Acting Regional Director of the Mid-Atlantic Region of the National Park Service, determined that allowing Marriott to proceed with its intended construction would not result in a 6(f) conversion of the lands subject to the conservation easement. In a letter to Albert E. Caccese, Deputy Commissioner and Counsel to the Office of New York State Parks and Recreation and Historic Preservation, Mr. Castleberry stated:

> This office has been aware of the Marriott proposal since August of 1979, and has been monitoring its development. This office has reviewed the Draft Envi-

ronmental Impact Statement and Hearing Report by the New York State Department of Environmental Conservation on the application by the Marriott Corporation in connection with the development of the Marriott/Minnewaska project. We have also reviewed the original L & WCF project for Lake Minnewaska State Park, including the conservation easement. In addition, we have reviewed the proposed amended conservation easement entitled the Restated and Amended Conservation Easement Agreement, the Limited Development Agreement, and the Foot Travel Easement, which I understand are to be conveyed to the PIPC in place of the original conservation easement. On the basis of this understanding, and upon consultation with the Associate Solicitor, Conservation and Wildlife, I conclude that none of the stated purposes for which the easement was acquired are defeated and that public recreation opportunities have been increased. Accordingly, the grant contract need not be modified, and the change in the conservation easement does not result in a 6(f) conversion. Accordingly, no Federal involvement in authorizing this project is required. . . .

Letter from Don Castleberry to Albert Caccese, AR at 1. The propriety of Mr. Castleberry's determination that no 6(f) conversion would result from the proposed amendment to the conservation easement, therefore, is the central issue presently before the Court.

As an alternative ground for relief, plaintiffs allege that the proposed amendment would permit discrimination on the basis of residence in violation of the provisions of 16 U.S.C. § 460*l*–8(f)(8) and the Department's own operating manual, since guests at the Marriott hotel would be permitted greater access to the proposed golf course than would the general public. Before reaching these contentions, however, the Court must resolve the federal defendants' arguments that there presently is no case or controversy before the Court, and that plaintiffs lack standing to bring this action.

## III

In support of their motion to dismiss, the federal defendants maintain that this action is not ripe for judicial review. The basis for this contention is twofold: 1) Marriott still has not entered into a final contract with Lake Minnewaska Houses, Inc. for the purchase of the lands subject to the conservation easement; and 2) although the PIPC has resolved to amend the conservation easement, it has not yet done so.

### A. *Ripeness*

■ Ripeness is a jurisprudential limitation on the exercise of a federal court's power, and not a "jurisdictional limitation imposed by Art. III" of the United States Constitution. *Buckley v. Valeo*, 424 U.S. 1, 114, 96 S.Ct. 612, 680, 46 L.Ed.2d 659 (1976). It is "'peculiarly a question of timing.'" *Id.* (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974)).

■ Here, this Court concludes that, even though Marriott has not completed negotiations to acquire the lands in question, and the PIPC has not yet amended the conservation easement, the controversy presented is ripe for judicial review. Essentially, this conclusion results from the fact that the Department of the Interior, through Mr. Castleberry, already has determined that no conversion would result from Marriott's proposed modifications to the eased property.

In *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), plaintiffs sought a judicial declaration that the Price-Anderson Act, which limits liability for nuclear accidents resulting from the operation of federally licensed private nuclear power plants, was unconstitutional. Notwithstanding that the Act had not yet been invoked, since no nuclear accident had occurred, the Court found the controversy ripe for judicial review. This finding resulted, in part, because "all parties would be adversely affected by a decision to defer definitive resolution of the constitutional validity vel non of the Price-Anderson Act."

*Id.* at 82, 98 S.Ct. at 2635. Similarly, the parties involved in the case at bar would be affected adversely if this Court deferred resolution of the questions presented here.

Clearly, Marriott would benefit from the certainty provided by a judicial determination of whether a conversion *vel non* would result from its proposed construction. The uncertainty which would result from not obtaining such a determination undoubtedly would undermine Marriott's ability to continue its negotiations for the acquisition and modification of the land in question.

Similarly, at the very least, plaintiffs stand to gain nothing if this Court delays a determination of these issues. Their desire to have them resolved is evidenced even by the very commencement of the instant litigation.

Finally, although the federal defendants have themselves raised the question of ripeness, they have given the Court no basis upon which to conclude that resolution of the issues presented would be detrimental to them in any way. To the contrary, it is apparent that a determination of whether a 6(f) conversion would result here would benefit the Department by clarifying its responsibilities under the Act. These considerations lead this Court to conclude that the present controversy is ripe for review.

Moreover, since it is the propriety of the Department's determination that is in issue, and since that determination quite obviously already has been made, this Court would " 'be in no better position later than [it is] now' to decide [these] question[s]." *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. at 82, 98 S.Ct. at 2635 (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. at 143–45, 95 S.Ct. at 358–59). Accordingly, for this reason, as well as for the reasons stated above, this Court finds the jurisprudential concerns relating to ripeness not to be a bar to the instant litigation.

### B. *Standing*

■ In support of their allegation that plaintiffs lack standing to maintain this action, the federal defendants maintain that plaintiffs have suffered no "injury in fact resulting from the challenged activity. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152 [90 S.Ct. 827, 829, 25 L.Ed.2d 184] (1970)." Government's Memorandum in Support of Motion to Dismiss at 8. The Government's conclusion in this regard is premised upon the fact that "[t]he amended easement was never finalized between the Palisades Interstate Park Commission and the Marriott Corporation." *Id.* However, this argument merely echoes the contentions previously raised with respect to ripeness, and already rejected by the Court.

According to the allegations contained in the complaint, "Friends of the Shawangunks was organized over ten years ago *to ensure the preservation and prudent development of the Shawangunk Mountains* in Ulster County, New York as a natural resource for all to enjoy." Complaint, ¶ 3 (emphasis added). Moreover, it is alleged that

> Friends of the Shawangunks has approximately 600 members, many of whom live in the environs of Lake Minnewaska and almost all of whom use the Lake Minnewaska for recreational purposes including hiking, swimming, cross-country skiing, etc. The conversion of the scenic conservation easement located at Lake Minnewaska which was acquired pursuant to Land and Water Conservation Fund assistance will adversely affect many of Friends of the Shawangunks' members' use and enjoyment of Minnewaska State Park and other lands open to the public for recreational use and which are adjacent to Lake Minnewaska.

*Id.* It is beyond question that these allegations suffice to confer standing upon Friends of the Shawangunks in this action. *See Hunt v. Washington State Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

Similarly, this Court finds that the allegations in the complaint concerning injury

to the individual plaintiffs named herein establish their standing. These plaintiffs are "members of Friends of the Shawangunks" who "live in the environs of Lake Minnewaska and use the Lake Minnewaska for recreational purposes ...." Complaint, ¶ 4. Moreover, they allege that the proposed amendment to the easement would "adversely affect their use and enjoyment" of the park and its surrounding area. Although the Government may disagree with these allegations raised in the complaint, such disagreement provides no basis for this Court to deny plaintiffs standing to maintain the instant action. Accordingly, the Government's motion to dismiss the complaint on the ground that plaintiffs lack standing must be denied.

### C. *Conversion*

■ Turning to the merits, it must be emphasized at the outset that the scope of this Court's review of the Secretary's determination is highly deferential, and the Court may not substitute its own judgment for that of the Secretary. *See Sierra Club v. Andrus,* 487 F.Supp. 443 (D.D.C.1980), *aff'd,* 659 F.2d 203 (D.C.Cir.1981). With this narrow standard of review in mind, the Court can proceed with its consideration of the gravamen of plaintiffs' complaint, that is, whether the Secretary's determination that no 6(f) conversion would occur by the amendment of the conservation easement is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...." 5 U.S.C. § 706(2)(A).

■ In addressing the propriety of the Secretary's determination that no conversion will occur, the parties have emphasized their respective conclusions as to whether the proposed amendment to the conservation easement will defeat any of the stated purposes of that easement. *See* Plaintiffs' Memorandum of Law at 4; Government's Supplemental Memorandum at 7. This Court believes that the parties'

concern with whether any purpose of the original easement might be defeated is, to some degree, misplaced. It does not follow inexorably that a change in the easement's stated purpose also will result in a conversion within the meaning of the Act. Whether a conversion will occur necessarily is determined solely by whether the property in question will be changed to other than "outdoor, public, recreation use." [4]

Critical to resolution of this question is an evaluation of the subject property both prior to and following implementation of the proposed amendment. In other words, because this Court is examining the question of whether there was a *conversion,* an event involving some sort of transformation, it is essential here to determine whether the lands subject to the easement presently are used for "outdoor, public recreation," and whether the effect of the proposed amendment would be to terminate such outdoor, public, recreational use. Since this Court finds that the eased lands adjacent to Lake Minnewaska presently are not intended for outdoor, public, recreational use, there can be no conversion here, and the Secretary's determination in this regard must be upheld.

The Court is not persuaded by plaintiffs' argument that since, under the terms of the proposed amendment, the public will be afforded only limited access to Marriott's expanded golf course and hiking trails, or that since the proposed remodeling and expansion of the former Lake Minnewaska Houses, Inc. hotel will not enure to the public benefit generally, a conversion will result thereby. There is no question here that the public presently is accorded no access to the eased lands under the existing terms of the conservation easement. Whatever limited public access is contemplated by the terms of the proposed amendment to that easement, therefore, must be viewed as nothing less than a bonus to the

---

4. This Court agrees with plaintiffs' conclusion that an easement is subject to the provisions of § 6(f), and that an amendment to an easement can constitute a conversion within the meaning of § 6(f). However, these questions need not be reached in light of the Court's determination that, in any event, the Secretary's finding that there is no conversion here will not be disturbed.

public, and not as a diminution in, or conversion of, the availability of public, outdoor, recreation facilities.[5]

Plaintiffs also assert that, by virtue of restricting public access to the proposed eighteen hole golf course, Marriott would establish a preference based upon residence in contravention of the provisions of 16 U.S.C. § 460*l*-8(f)(8) which provides:

> With respect to property acquired or developed with assistance from the fund, discrimination on the basis of residence, including preferential reservation or membership systems, is prohibited except to the extent that reasonable differences in admission and other fees may be maintained on the basis' of residence.

This contention must be rejected. As indicated above, any access to the eased property must be viewed as a bonus, rather than as a diminution in public recreational use. It would serve no purpose to read § 460*l*-8(f)(8) to permit *no* access to the eased property, and to make it unlawful to permit only *limited* public access to the property. This Court declines to attribute to that statute so counterproductive a meaning.

Plaintiffs also claim that the difference in access by the public and by anticipated guests at the hotel to the proposed Marriott golf course contravenes the provisions of the Secretary's "Land and Water Conservation Fund Grant Manual," (AR, Ex. 34) ("Manual"), which interprets the provisions of § 460*l*-8(f)(8). *See* Manual § 485.-2.4 B. In their memorandum of law at page 15, plaintiffs furnish the following:

> Section 685.2.4.A. provides:

> Property acquired or developed with assistance from the Fund shall be open to entry by all persons.... Discrimination on the basis of residence, including preferential reservation or membership systems, is prohibited, except to the extent that reasonable differences in admission

or other fees may be maintained on the basis of residence.

As plaintiffs indicate, the first sentence in the quoted language appears at § 685.2.4 *A*, and requires property to be open to *all persons*. That section reflects the requirements of Title VI of the Civil Rights Act of 1964 by prohibiting discrimination on lands purchased under the Act on the basis of race, color, religion, sex or national origin. It does not refer in any way to the prohibition against residential preferences found in § 460*l*-8(f)(8). That prohibition is dealt with under § 685.2.4 *B* of the Manual, which does not require expressly that "all persons" be permitted access to property acquired with federal funding. Accordingly, this Court is not persuaded by plaintiffs' inadvertent joinder of the provisions of § 685.2.4 A and § 685.2.4 B.

More important, however, is the caveat found in § 685.2.4 B which provides that "[t]he provisions of [this section] apply *only to the recreation area* described in the project agreement." (emphasis added). The term "recreation area" is not among the definitions provided in § 600.2.1 of the Manual. However, this Court believes that, in the case at bar, that term most properly would include only those portions of the Lake Minnewaska Park which are open to public, recreational use, and would not include the eased lands to which the public is afforded no access. Accordingly, even if this Court were to construe the prohibition against *residential* preferences to include preferences in favor of anticipated hotel *guests*, the Court would not extend such prohibition to the easement area which only happens to adjoin the public areas of the park.

### IV

For all of the foregoing reasons, the Court concludes there is no basis upon which to disturb the Secretary's determination that no conversion will occur if the

---

**5.** Irrelevant to the Court's determination are Mr. Castleberry's findings "that none of the stated purposes for which the easement was acquired are defeated and that public recreation opportu-
nities have been increased," AR, Ex. 1. *See also* AR, Ex. 14 (referring to "classic tradeoff situation").

conservation easement is amended. Accordingly, plaintiffs' motion for summary judgment is denied; defendant Marriott's motion for summary judgment is granted, and its motion to dismiss the complaint is denied; the federal defendants' motion for judgment on the pleadings is granted, and the federal defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted is denied.

It is so Ordered.

Dated: April 2, 1984

Albany, New York