SIERRA CLUB, a nonprofit corporation, Plaintiff-Appellant,

v.

R. Max PETERSON, in his official capacity as Chief, United States Forest Service; John R. Block, in his official capacity as Secretary of the Department of Agriculture, et al., Defendants-Appellees.

COALITION FOR ALTERNATIVES TO PESTICIDES IN NORTHERN CALIFORNIA and Orleans Citizens Against Toxic Sprays, Plaintiffs-Appellants,

v.

John BLOCK, Secretary, United States Department of Agriculture, R. Max Peterson, Chief, United States Forest Service, United States Department of Agriculture, Zane G. Smith, Jr., Regional Forester, California Region, Defendants-Appellees.

Nos. 82–4489, 82–4490.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1983.

Decided April 13, 1983.

Laurens H. Silver, San Francisco, Cal., David A. Van Note, Downieville, Cal., for plaintiffs-appellants.

Martin Green, Washington, D.C., for defendants-appellees.

Before MERRILL, GOODWIN and SNEED, Circuit Judges.

MERRILL, Circuit Judge:

Appellant Sierra Club seeks an injunction requiring the United States Forest Service to cease the spraying of the herbicide 2,4–D on Forest Service lands in Del Norte and Humboldt Counties, California, without having first complied with state permit requirements or having secured a presidential order exempting it from such compliance.[1] The District Court dismissed the action and the Sierra Club appeals.

In 1947, Congress enacted the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), which was completely revised by the Federal Environmental Pesticide Control Act of 1972, 7 U.S.C. §§ 136, et seq., as amended. Sections 136u and 136v encourage the states to cooperate with the Federal Administrator of FIFRA and to provide for registration of pesticides and regulation of their use consistent with the provisions of FIFRA.

■ In 1978, President Carter issued Executive Order 12088 ("EO"), reprinted at 42 U.S.C.A. § 4321 (Supp.1982),[2] which re-

---

1. No question has been raised as to the Sierra Club's standing to bring suit.

The Sierra Club's complaint and this appeal are consolidated with a similar suit brought by the Coalition for Alternatives to Pesticides in Northern California and Orleans Citizens Against Toxic Sprays. For the sake of convenience in this Opinion we refer only to the Sierra Club's action but the Opinion disposes of both appeals.

2. EO 12088 provides in relevant part:

quires federal agencies either to comply with state pollution control standards established pursuant to FIFRA or to secure a presidential order exempting them from application of such standards.[3]

California Food and Agriculture Code §§ 14001–14098 establish pollution control standards pursuant to FIFRA. Those sections require that a permit be obtained before any aerial spraying of the herbicide 2,4–D.

Until the summer of 1982, the Forest Service obtained permits from agents of the California Department of Food and Agriculture for the aerial spraying of 2,4–D. This herbicide retards hardwood growth in favor of conifer growth and assertedly its use is pursuant to federal policy to promote conifer growth in the national forests. In February 1982, however, the California Superior Court for the County of Humboldt restrained the issuance of herbicide spraying permits, holding that before such permits can be issued the state must promulgate new regulations providing land owners and residents in the vicinity of the spraying zone with notice and an opportunity to comment. New regulations were proposed by the California Department of Food and Agriculture but were ruled inadequate by the state Office of Administrative Law, and the restraint against permit issuance remains in force at this time. The court order thus became a part of the state's pollution control standards with which the EO requires compliance.

Sierra Club's complaint alleges that in May 1982, the Forest Service "decided to proceed with all planned aerial applications of 2,4–D without state permits until such time as the State of California once again has in place valid regulations pertaining to herbicide use and has again undertaken the processing of applications for use permits for aerial spraying." In dismissing the action the District Court found:

1-102. The head of each Executive agency is responsible for compliance with applicable pollution control standards, including those established pursuant to, but not limited to, the following:

    *    *    *    *    *    *

(i)    [FIFRA]

    *    *    *    *    *    *

1-103. "Applicable pollution control standards" means the same substantive, procedural, and other requirements that would apply to a private person.

    *    *    *    *    *    *

1–702. The head of an Executive agency may, from time to time, recommend to the President through the Director of the Office of Management and Budget, that an activity or facility, or uses thereof, be exempt from an applicable pollution control standard.

3. The Forest Service did not contend in its brief on appeal that the President was without authority to promulgate EO 12088. The question did, however, arise during oral argument. We find ample authority.

Title 42 U.S.C., Chapter 52, deals with intergovernmental cooperation. Section 4231(a) notes that:

The economic and social development of the Nation and the achievement of satisfactory levels of living depend upon the sound and orderly development of all areas, both urban and rural. Moreover, in a time of rapid urbanization, the sound and orderly development of urban communities depends to a large degree upon the social and economic health and the sound development of smaller communities and rural areas....

Section 4231(b) provides:

All viewpoints—national, regional, State, and local—shall, to the extent possible, be fully considered and taken into account in planning Federal or federally assisted development programs and projects. State and local government objectives, together with the objectives of regional organizations shall be considered and evaluated within a framework of national public objectives, as expressed in Federal law, and available projections of future national conditions and needs of regions, States, and localities shall be considered in plan formulation, evaluation, and review.

Section 4231(a) provides:

... The President shall, therefore, establish rules and regulations governing the formulation, evaluation, and review of Federal programs and projects having a significant impact on area and community development, including programs providing Federal assistance to the States and localities, to the end that they shall most effectively serve these basic objectives....

It can hardly be denied that the project in question, the aerial spraying of 2,4–D in national forests, has a significant impact on area and community development. The action taken by the Humboldt County Superior Court establishes that fact beyond question.

The State of California by its failure to adopt new regulations in conformity with the Humboldt County Superior Court's decision, and by its permit moratorium, has made it impossible for the Forest Service to comply with the State permit regulations and thereby has frustrated the carrying out by the Forest Service of Congressionally mandated reforestation programs.

The Court concluded:

State inaction cannot be allowed to frustrate federal policy in regard to federal lands.

(citation omitted)

■ The Sierra Club contends that EO 12088 requires that to the extent that California pollution control standards and procedural requirements apply to private persons they shall also apply to the federal government, and that escape from those standards and requirements can be had only through a presidential order. We agree. Through its Superior Court, California has expressed the view that spraying permits are not to be issued until residents of the spraying zone have been given the opportunity to express objections. The procedural problems presented have resulted in a requirement that no permits at all may be issued until those problems have been resolved. By the express language of the EO, this requirement applies to the Forest Service.

While it is true that the Forest Service is mandated by the Forest and Rangeland Renewable Resources Planning Act of 1974, 16 U.S.C. §§ 1600 *et seq., as amended,* to increase "harvest levels based on intensified management practices, such as reforestation ...," 16 U.S.C. § 1604(g)(3)(D), in the National Forest System, nowhere does this mandate expressly call for the use of herbicides. There is no direct inconsistency between the mandate and local law.

■ Appellees' principal contention on appeal is that FIFRA does not provide for private suits for injury suffered by an agency's violation of the Act. Sierra Club responds that its suit is not based upon a violation of FIFRA but upon a violation of the EO, which order is enforceable in civil suits against the government. *Legal Aid Society of Alameda County v. Brennan,* 608 F.2d 1319, 1329–31 (9th Cir.1979). Under § 10 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, parties adversely affected by agencies allegedly acting contrary to law may sue. That section provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.[4]

■ Under 5 U.S.C. § 701(a)(1), however, review under the APA is unavailable if review of agency action is precluded by other law. The government contends that under 5 U.S.C. § 701, FIFRA should be read as impliedly forbidding the relief sought, and that because Congress through FIFRA intended to preclude private lawsuits, no other source of law, such as the EO or the APA, can serve as a basis of jurisdiction. While the Act does not contain any express denial of private suits or injury, the government contends that FIFRA's legislative history demonstrates that Congress intended to preclude review of agency action relating to FIFRA. In the Senate a citizens' suit provision was proposed in committee in conjunction with proposed amendments to FIFRA. Later a modified citizens' suit provision was passed by the Senate but removed at conference, and the amendments became law without such a provision.

■ We reject this contention. Mere silence in the statute should not be read as precluding judicial review under the APA. Such review "shall not be deemed foreclosed unless Congress has forbidden review in

---

4. The fact that there is no express or implied private right of action under EO 12088 does not prevent review of agency action under the APA. *California v. Watt,* 683 F.2d 1253, 1270 (9th Cir.1982); *see Chrysler Corp. v. Brown,* 441 U.S. 281, 317, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979).

unmistakable terms." *County of Alameda v. Weinberger,* 520 F.2d 344, 348 (9th Cir. 1975).

■ Statutory clauses expressly allowing citizens' suits are designed to encourage individuals to litigate as private attorneys general and usually contain incentives to litigation, such as providing for payment of counsel fees. *E.g.,* 33 U.S.C. § 1365 (court may award litigation costs under Water Pollution Control Act citizens' suit clause). Absence of such a clause, or the elimination of such a clause when proposed, is not an indication of Congressional intent to prohibit such suits but an indication of intent not actively to encourage them. The government has failed to meet its burden of demonstrating preclusion of review. *See Barlow v. Collins,* 397 U.S. 159, 167, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970).

We conclude that the Sierra Club has a right under the Administrative Procedures Act to secure judicial review of the action proposed by the Forest Service, and that the Forest Service, under EO 12088, must comply with California's pollution control standards or secure a presidential order exempting it from doing so.

JUDGMENT REVERSED.