**OREGON ENVIRONMENTAL COUNCIL, Citizens For the Safe Control of the Gypsy Moth, Elaine Olsen, Glen Olsen, Plaintiffs-Appellants,**

v.

**Leonard KUNZMAN, Director, State of Oregon, Department of Agriculture, State of Oregon, Department of Agriculture, John R. Block, Secretary, United States Department of Agriculture, et al., Defendants-Appellees.**

No. 82–3232.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1983.

Decided Aug. 30, 1983.

Peter R. Steenland, Martin Green, Washington, D.C., William F. Nessly, Jr., Asst. Atty. Gen., Salem, Or., for defendants-appellees.

Larry N. Sokol, Jolles, Sokol & Bernstein, Portland, Or., John E. Bonine, Michael Axline, Eugene, Or., for plaintiffs-appellants.

Before CHOY, FERGUSON, and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The United States and Oregon Departments of Agriculture announced plans to spray a 6,400 acre area of South Salem, Oregon with a pesticide containing the chemical carbaryl in order to combat an infestation of the gypsy moth (*Lymantria dispar*). Residents of South Salem and two environmental groups then filed this action to prevent the aerial spraying. They sought relief against the federal defendants under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702 and 706 (1976), and under several statutes and regulations that they alleged to have been violated: the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332 (1976), the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.* (1976), and regulations of the Federal Aviation Administration (FAA), 14 C.F.R. § 137 (1982). They sought relief against the state defendants under 42 U.S.C. § 1983 (1976) for deprivation of federal rights secured by FIFRA and the FAA regulations.

The district court held that the spraying program was subject to review under the APA, but that there had been no violation of NEPA. It also held that neither FIFRA nor the FAA regulation conferred a private right of action or rights subject to protection under 42 U.S.C. § 1983. We affirm in part and reverse in part.

## PROCEDURAL ISSUES

The state appellees contend that this appeal is moot and argue in support of the district court's ruling, challenged by the appellants, that Section 1983 provides no cause of action here. The federal appellees seek to reverse the ruling that a right of review exists under the APA.

*Mootness*

The state appellees describe the May, 1982 spraying program as "completely successful." They contend that any future gypsy moth problem will be met with new

technology not involving the spraying of carbaryl, making this case moot.[1]

The appellants properly note, however, that this case involves acts that are capable of repetition yet could evade review. *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *United States v. Oregon*, 657 F.2d 1009, 1012 n. 7 (9th Cir.1981). Gypsy moths are still found in Oregon; aerial spraying remains an active option. There is a reasonable danger that the challenged conduct will reoccur and affect at least some of the appellants. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam); *Williams v. Alioto*, 549 F.2d 136, 143–44 (9th Cir.1977).

Moreover, this case involves a continuing policy of the state and federal governments involving the use of this pesticide in populated areas. *See Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F.2d 585, 591 n. 1 (9th Cir.1981). The district court has the power to grant effective injunctive or declaratory relief on remand, a fact that distinguishes *Bumpus v. Clark*, 702 F.2d 826 (9th Cir.1983), and *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377 (9th Cir. 1978). This case is not moot.

*Review under the APA*

■ The appellants asserted a cause of action against the federal appellees under the APA for alleged violations of FIFRA.[2] On appeal, the federal appellees contend that the legislative history of FIFRA demonstrates that Congress intended to foreclose review under the APA. That history reveals a somewhat ambiguous rejection by the House-Senate conference committee of a provision permitting citizens' suits. Having secured review under the APA, appellants do not pursue on appeal their claim to

an implied private right of action under FIFRA, and we assume for purposes of decision that no such right exists. However, "[a] plaintiff need not establish a private right of action under a statute before it may sue under the APA." *Glacier Park Foundation v. Watt*, 663 F.2d 882, 885 (9th Cir.1981); *See also California v. Watt*, 683 F.2d 1253, 1270 (9th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 2083, 77 L.Ed.2d 295 (1983). In *Sierra Club v. Peterson*, 705 F.2d 1475 (9th Cir.1983), we held that the Sierra Club could sue under the APA over alleged violations of Executive Order 12088, *reprinted at* 42 U.S.C. § 4321 (Supp. V 1982), which requires federal agencies either to comply with state pollution control standards established pursuant to FIFRA or to secure a presidential exemption from compliance.

The federal appellees at oral argument contended that *Peterson* only found a cause of action under the APA to enforce E.O. 12088, not violations of FIFRA itself. We find that distinction not to be compelling. In *Peterson*, as part of our reasoning that E.O. 12088 could not be enforced through the APA, we squarely held that Congress in eliminating the citizens' suits provision did not foreclose review of violations of FIFRA under the APA. 705 F.2d at 1478–79. The district court was therefore correct in ruling that appellants could obtain review under the APA.

*Cause of Action Under 42 U.S.C. § 1983*

The state appellees argue that because FIFRA provides for no express or implied right of action, there is no "private substantive right" enforceable under section 1983. That is not the test, however. There is no

---

1. The federal appellees do not join in the mootness argument, considering this controversy capable of repetition.

2. FAA regulations cited by appellants prohibit the aerial spraying of any pesticide registered under FIFRA "[c]ontrary to any safety instructions or use limitations on its label," 14 C.F.R. § 137.39(a)(2) (1982), or "in violation of any law or regulation of the United States," *id.* at (a)(3), or "in a manner that creates a hazard to persons or property on the surface." 14 C.F.R. § 137.37 (1982). The appellants do not con-

tend that the manner of application, apart from the substance applied, created a hazard. As the label restriction (and hence FIFRA) is the only federal law or regulation allegedly violated, the FAA regulations do not impose any additional requirements here beyond those imposed by FIFRA. We therefore need not consider whether appellants may state a cause of action under the APA, and under section 1983 with respect to the state appellees, for violations of the FAA regulations.

private right of action under the Social Security Act, *Edelman v. Jordan,* 415 U.S. 651, 673–74, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974), but a cause of action under section 1983 is available. *Maine v. Thiboutot,* 448 U.S. 1, 6, 100 S.Ct. 2502, 2505, 65 L.Ed.2d 555 (1980). The questions remain, however, whether FIFRA secures to appellants any "rights" subject to protection under section 1983, *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981), and whether Congress has foreclosed private enforcement of FIFRA in the statute itself, *Middlesex County Sewerage Authority v. National Sea Clammers,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981). *See Meyerson v. Arizona,* 709 F.2d 1235, 1238–40 (9th Cir.1983). We find it unnecessary to address these issues. We hold below that the actions of appellees in spraying South Salem did not violate FIFRA. That ruling defeats on the merits the section 1983 action against state appellees for violating rights secured by FIFRA.[3] We therefore do not reach the question whether, had a violation of FIFRA been shown, a section 1983 action would lie.

## SUBSTANTIVE ISSUES

Appellants base their challenge to the spraying program on FIFRA, which applies to both the federal and the state appellees, and on NEPA, which by its terms applies only to the federal appellees.

### NEPA

■ The appellants contest the district court's determination that the federal appellees complied with NEPA. Appellants contend that the Act required a site-specific environmental impact statement (EIS), instead of the more general programmatic environmental impact statement (PEIS) submitted.

The appellees submitted a PEIS developed by the U.S. Forest Service for gypsy moth spraying programs in forested areas of the northeastern United States. They also submitted a three-page environmental assessment (EA) describing the South Salem program.[4] Appellants argue that the PEIS and EA were deficient in several respects and did not satisfy appellees' responsibility to prepare a full EIS.

We agree that the PEIS and EA did not provide the information "necessary reasonably to enable the decision-maker to consider the environmental factors and to make a reasoned decision." *Westside Property Owners v. Schlesinger,* 597 F.2d 1214, 1217 (9th Cir.1979). We find the agency's decision to proceed on the basis of this PEIS and EA unreasonable. *See Foundation for North American Wild Sheep v. U.S. Dep't of Agriculture,* 681 F.2d 1172, 1177 & n. 24 (9th Cir.1982).

The district court accepted the PEIS and EA as the equivalent of an EIS, but the project described in the PEIS differed significantly from the South Salem program. *See California v. Block,* 690 F.2d 753, 761–62 (9th Cir.1982). The studies cited in the PEIS only briefly examine the effects of the spraying on people living or working in or near the areas sprayed. Those studies do not discuss the effects of direct spraying of a populated, residential area. The PEIS does not discuss the effects of "immediate" contact with spray, nor contact by children or those sensitive to chemicals. The PEIS discusses the shielding effect of the forest canopy in shielding from the spray, but South Salem is mostly cleared land.[5] Final-

---

3. For the same reasons, a section 1983 action against the state appellees for violations of FAA regulations would fail on the merits. See note 2 *supra.*

4. An agency may prepare an EA if an EIS is not required, or may prepare one to determine whether an EIS is required. *See Foundation for North American Wild Sheep v. U.S. Dep't of Agriculture,* 681 F.2d 1172, 1178 (9th Cir.1982).

5. In comments on the draft version of the PEIS, the Director of the California Department of Food and Agriculture noted that the PEIS did not meet the needs of gypsy moth treatment in that state. The Director noted that the draft PEIS discussed a generally infested forest situation, while California faced localized infestations in urban and suburban "sensitive areas." Letter from R.E. Rominger to H.C. Mussman, June 23, 1981. While the Forest Service considered these comments, the final PEIS did not

ly, the PEIS assumed that individual landowners could opt out of the spraying program, an option not part of the South Salem program. These major variations between the PEIS and the South Salem program are too significant for compliance with NEPA. *Foundation for North American Wild Sheep,* 681 F.2d at 1178–79; *City & County of San Francisco v. United States,* 615 F.2d 498, 500 (9th Cir.1980); *see also Chelsea Neighborhood Ass'n v. U.S. Postal Service,* 516 F.2d 378, 389 (2d Cir. 1975); *California v. Bergland,* 483 F.Supp. 465, 488 (E.D.Cal.1980), *modified sub nom. California v. Watt,* 690 F.2d 753 (9th Cir. 1982). Nor does the EA, which simply purports to apply the PEIS to South Salem, correct these deficiencies.

■ In addition, the appellants contended that significant new developments in techniques for combatting the gypsy moth since the preparation of the PEIS require the preparation of a new EIS. We find merit in this contention.[6] Moreover, while the PEIS does briefly discuss the health risks of carbaryl, it does not consider the supposedly carcinogenic effects of an attendant by-product of carbaryl, nitrosocarbaryl. *See* 40 C.F.R. § 1508.27(b)(4) (1982); *Foundation for North American Wild Sheep,* 681 F.2d at 1178–1182. The licensing of pesticides containing carbaryl does not "reflect a conclusion that a pesticide is safe under *any* conditions," as the federal appellees asserted in their brief. One agency cannot rely on another's examination of environmental effects under NEPA. *Calvert Cliffs' Coordinating Comm. v. Atomic Energy Comm'n,* 449 F.2d 1109, 1123 (D.C. Cir.1971). "Thus, the mere fact that a program involves use of substances registered under FIFRA does not exempt the program from the requirements of NEPA." *Citizens Against Toxic Sprays, Inc. v. Bergland,* 428 F.Supp. 908, 927 (D.Or.1977).

We do not hold that federal agencies always must prepare a full and detailed site-specific EIS before spraying any localized infestation of gypsy moths in a populated area. It may be possible to fulfill the requirements of NEPA with a new PEIS that fully discusses the risks, effects, and benefits of aerial spraying programs in urban or suburban areas. Such a PEIS could then be supplemented with a site-specific EA which would provide an opportunity for comments by affected parties. The seriously deficient PEIS and EA for the South Salem program, however, did not satisfy NEPA.

FIFRA

■ Appellants contend that the aerial spraying contravened the restrictions on the label of the pesticide, in violation of FIFRA, 7 U.S.C. § 136j(a)(2)(G). Specifically, they assert that the direct aerial application to a residential area ignored the label's warning to "avoid" breathing of spray and contact with skin and eyes.

The district court found that the appellees had taken sufficient precautions to comply with the label restrictions. We agree. The appellees used helicopters instead of fixed-wing aircraft to enable more accurate spraying. The court in addition approved or ordered the use of buffer zones, balloon markers, plastic sheeting, and pretreatment overflights to prevent any direct application to lakes, ponds, and streams. The court also ordered that the appellees send additional notices by mail to all persons living in the spray area, so that they might remain indoors or out of the area during spraying.

The directions on the pesticide's label therefore do not prohibit the South Salem program, as implemented. *Cf. George's Pest Control Service v. U.S. Environmental Protection Agency,* 572 F.2d 204 (9th Cir.

---

reflect any changes based on them. *See* PEIS at Appendix C–19.

**6.** The oral argument of the state appellees implicitly supported this contention. As part of their mootness argument, the state contended that new pest control techniques, currently available and in use, would prevent the need to spray carbaryl again over South Salem. The PEIS and EA do not reflect and consider these new developments.

1977) (per curiam) (application of pesticide with spray gun did not comply with restrictions on label to apply "directly to cracks and crevices").[7] Appellants basically argue that the risks of carbaryl are too high to spray any residential neighborhood. However, the EIS process provides the proper forum to weigh the risks and benefits of a specific pesticide program. The method of application used was not so egregious as to violate the restrictions on the label and FIFRA.

## CONCLUSION

The district court properly entertained this action against the federal appellees under NEPA and under the APA to review compliance with FIFRA. The district court correctly concluded that the South Salem spraying program did not violate FIFRA by failing to comply with the restrictions on the pesticide's label. The district court erred, however, in holding that the federal appellees had met the requirements of NEPA; a more specific and appropriate EIS was required for the spraying of South Salem.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs in this appeal.

---

**7.** We do not find controlling the EPA advisory opinion temporarily allowing spraying but excluding areas within one half mile of permanent human habitations and areas surrounding certain waters, 45 Fed.Reg. 32420 (May 16, 1980). First, the EPA issued the opinion in response to a specific problem with the spruce budworm in Maine. The advisory opinion, much like the invalid PEIS at issue here, is written in terms of the specific location of that problem. Second, the advisory opinion does not require several of the alternative protective measures taken in the South Salem program. Those additional measures may have made unnecessary the specific protections listed in the advisory opinion.