**CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., et al., Plaintiffs,**

**v.**

**James G. WATT, et al., Defendants,**

**Atlantic Richfield Company, et al., Intervenors.**

**COMMONWEALTH OF MASSACHUSETTS, Plaintiff,**

**v.**

**James G. WATT, et al., Defendants,**

**Atlantic Richfield Company, et al., Intervenors.**

**Civ. A. Nos. 83–0506–MA, 83–0530–MA.**

United States District Court, D. Massachusetts.

April 25, 1984.

Douglas I. Foy, Boston, Mass., argued, for plaintiffs; R. Alan Fryer, Donald Berry, and Cheryl Conner, Conservation Law Foundation, Boston, Mass., on brief.

Margaret Strand, Washington, D.C., argued, for defendants; Carol E. Dinkins,

Asst. Atty. Gen. and Gary B. Randall, Land and Natural Resource Div., U.S. Dept. of Justice, Washington, D.C., on brief.

E. Edward Bruce, Washington, D.C., argued, for intervenors/defendants; Richard A. Meserve and Covington & Burling, Washington, D.C., on brief.

Robert R. Ruddock, New England Legal Foundation, and Greater Boston Chamber of Commerce, New England Council, Boston, Mass., on brief amicus curiae for all defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiffs, the Conservation Law Foundation of New England, Inc. (CLF), the Commonwealth of Massachusetts, and ten environmental organizations and fishery associations brought suit to enjoin James G. Watt, then Secretary of the Interior (the Secretary), from conducting a sale of leases for the exploration, development and production of oil and natural gas in the Georges Bank region of the Outer Continental Shelf. The sale, designated Lease Sale 52, was planned originally for March 29, 1983. On March 28, 1983, however, this Court issued a preliminary injunction preventing the proposed sale on the grounds that it likely would violate four statutes: the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.;* the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 *et seq.;* the Coastal Zone Management Act (CZMA), 16 U.S.C. §§ 1451 *et seq.;* and the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331 *et seq.,* 1801 *et seq. Conservation Law Foundation v. Watt,* 560 F.Supp. 561 (D.Mass. 1983). The First Circuit affirmed the issuance of this preliminary injunction on September 16, 1983, concluding that this Court's decision was supported adequately by the likelihood of a NEPA violation. *Commonwealth of Massachusetts v. Watt,* 716 F.2d 946 (1st Cir.1983). Subsequently, the Department of the Interior cancelled Lease Sale 52. 48 Fed.Reg. 52649 (November 21, 1983). This matter is before the Court on several motions: the federal de-fendants' motion to dismiss these actions as moot; the plaintiffs' motion to clarify the preliminary injunction; and the federal defendants' and intervenor-defendants' motions to vacate the preliminary injunction. The parties have filed memoranda and other material in support of their respective positions.

In issuing the preliminary injunction, this Court found that the plaintiffs exhibited a likelihood of success on the merits of their claims raised under NEPA, ESA, CZMA and OCSLA. In general, the plaintiffs contend that the Secretary inadequately assessed the respective costs and benefits of proceeding with Lease Sale 52 or the proposed alternatives. Specifically, with regard to NEPA, following the period for public and inter-agency comment on the Draft Environmental Impact Statement and immediately prior to publication of the Final Environmental Impact Statement (FEIS), the recoverable resource estimates were dropped to only 3.1 percent of the oil and 5.3 percent of the gas estimated originally. Although this dramatic decrease in the anticipated benefits from the sale was acknowledged in the FEIS, nowhere was this revised information incorporated into the various cost-benefit analyses. As a result, I found that: "[T]he Court is unable to evaluate the Department's efforts to take into account the values protected by NEPA, the public is denied access to complete information as to the weighing of costs and benefits performed by the Secretary in reaching his decision, and the integrity of the decision-making process as a whole is threatened." 560 F.Supp. at 570.

With regard to the ESA, neither the Biological Opinion required by the ESA and rendered by the National Marine Fisheries Service, nor the FEIS, incorporated the final results of three scientific studies directly relevant to a complete determination of whether an endangered species would be jeopardized by the proposed exploration. The Secretary's failure to use the best available scientific information seemed a likely violation of the procedural component of the ESA. Substantively, the Secre-

tary seemed to fail in his duty to use "all methods and procedures" at his disposal to insure the protection of endangered and threatened species. In addition, the material relied upon by the Secretary in purported compliance with the ESA did not seem to support the conclusion stated in the FEIS that no jeopardy was likely, and the FEIS itself contained only an incomplete and conclusory discussion of the risk to endangered species. I concluded, therefore, that: "At best, the data contained in the Final EIS indicates that the conclusion of no jeopardy may be unsupported; at worst, that conclusion may be simply wrong." 560 F.Supp. at 573.

With regard to the CZMA, I found it was likely that the Secretary failed to articulate a proper basis for his finding that the proposed Lease Sale was consistent with the Massachusetts Coastal Zone Management Program, and failed to discharge his obligations under the CZMA. With regard to the OCSLA, the Secretary's analysis of the recommendations made by the Governor of Massachusetts under the OCSLA likely failed to consider and balance the full range of factors described in the OCSLA. As a result, I found the Secretary's analysis under the OCSLA likely to be arbitrary, capricious and in violation of the OCSLA.

The plaintiffs raised other claims in addition to these four statutory claims, however, I did not express any opinion as to the plaintiffs' likelihood of success on these other claims as I believed the major substantive issues raised to be addressed adequately by the balance of their complaint. 560 F.Supp. at 580. In granting the preliminary injunction, I noted that the public interest calls upon the courts to require strict compliance with environmental statutes. 560 F.Supp. at 583, *citing National Wildlife Federation v. Andrus*, 440 F.Supp. 1245, 1256 (D.D.C.1977). Since the plaintiffs demonstrated a likelihood of success on the merits of their claims that this mandate had not been satisfied, I found that the public interest was best served by enjoining the proposed sale "until such time as it may proceed in accordance with the law." 560 F.Supp. at 583. In affirm-

ing this Court's decision to issue an injunction, the First Circuit commented: "Presumably the district court will soon proceed to a full hearing on the merits. If the government issues a supplemental EIS before this litigation is concluded and seeks to have the preliminary injunction dissolved, the district court may wish to consider these other statutory issues again." 716 F.2d at 953.

This action, however, has not proceeded to a full hearing on the merits, nor has the government issued a supplemental EIS. Instead, the Department of the Interior has cancelled Lease Sale 52 in its entirety. The notice of this cancellation states that, as a result of the court opinions from this Court and the First Circuit, the Department has concluded that lengthy further steps would be required before Lease Sale 52 could be held. The notice continues:

> Under the Department of the Interior's 5-year OCS Oil and Gas Leasing Program, another lease offering is scheduled for the North Atlantic in February 1984. That offering is an areawide lease offering that includes all blocks that would have been offered in Sale 52. The MMS [Minerals Management Service] has prepared a final environmental impact statement (EIS) in connetion (sic) with the 1984 North Atlantic lease offering, taking into account the opinions of both the district court and the court of appeals.
>
> Because the final EIS for the 1984 North Atlantic lease offering examines the possible environmental effects of leasing all blocks covered by the Sale 52 litigation, MMS has determined that there would be no benefit to planning simultaneously to conduct both oil and gas lease offerings under both Sale 52 and the 1984 North Atlantic lease offering. Because the 1984 areawide offering encompasses all of proposed Sale 52, the Secretary has decided to cancel Sale 52 and proceed exclusively with the planning for the 1984 North Atlantic lease offering....

48 Fed.Reg. 52649 (November 21, 1983).

In their motion to dismiss these actions as moot, the defendants claim that the

plaintiffs specifically sought relief addressed only to Lease Sale 52. Defendants contend that these challenges were "fundamentally complaints that in planning and preparing for Lease Sale 52, defendants had not complied with all legal requisites." The defendants assert that these actions relating to Lease Sale 52 are now moot, and the plaintiffs must raise their concerns regarding these particular tracts in terms of the record for the 1984 North Atlantic offering.

In response, pursuant to Fed.R.Civ.P. 65(a), the plaintiffs seek a clarification of the preliminary injunction in order to establish without ambiguity that the defendants are enjoined from leasing any of the 488 tracts originally proposed for inclusion in Lease Sale 52, whether such sales proceed as "Lease Sale 52" or part of the 1984 North Atlantic lease offering. In contrast to the defendants who claim that the preliminary injunction was directed to "Lease Sale 52," the plaintiffs contend that this Court's order was addressed to "488 tracts encompassing 2.8 million acres of North Atlantic seabed." 560 F.Supp. at 565. The plaintiffs contend that the defendants cannot defeat the preliminary injunction by proceeding with a "renumbered but identical sale."

Subsequent to the plaintiffs' motion to clarify, the defendants have moved to vacate the preliminary injunction under the authority of *Commonwealth of Massachusetts v. Andrus,* 594 F.2d 872 (1st Cir.1979), and because Lease Sale 52 has been cancelled.

Critical to the determination of whether any of these motions should be allowed is the question of whether the preliminary injunction was addressed to "Lease Sale 52" itself, or to the 488 specific tracts involved in Lease Sale 52. The defendants contend that this Court's preliminary injunction was addressed to that one specific sale, and since that sale is now cancelled, the injunction is without meaning. The plaintiffs contend that the injunction extended to the 488 tracts, whether part of "Lease Sale 52" or any other sale, including the 1984 North Atlantic lease offering. Therefore, I turn my attention to this initial inquiry.

"Lease Sale 52" was an administrative action involving multiple, sale-specific planning steps. Included were draft and final environmental impact statements, with related hearings and public comments; two biological opinions; seven consistency determinations under the CZMA; proposed and final notices of sale; and consultations with state governors. The plaintiffs' challenges in these actions were aimed at deficiencies in the defendants' compliance with several federal statutes. In granting the preliminary injunction, this Court focused on the likelihood of the plaintiffs' success on the merits of the claims. As outlined above, I found it was likely that the Secretary inadequately assessed the respective costs and benefits of proceeding with Lease Sale 52 or the proposed alternatives. The FEIS did not take into consideration decreased recoverable resource estimates, nor were certain highly relevant biological studies incorporated into the Secretary's decision. The Secretary's conclusion that the sale, to the maximum extent practicable, was consistent with the Massachusetts Coastal Zone Management Program was inadequately supported. Also, the Secretary's analysis of the state governor's recommendations was not made in compliance with the factors described in the relevant statute. In short, the claims on which this Court felt the plaintiffs were likely to succeed were founded directly on deficiencies in the record and determination relating to Lease Sale 52.

While the plaintiffs would have this Court find that these deficiencies in the compliance with statutory mandates pertain directly to the 488 tracts involved in Lease Sale 52, this Court must draw a clear distinction between the sale itself and the object of the sale. The deficiencies in the record do not run with the tracts involved; rather, they pertain only to the record and determination of the Secretary in this particular sale. As suggested by the Court of Appeals, the Secretary could have filed a

supplemental EIS and made other necessary determinations to meet the challenges raised by the complaint against Lease Sale 52, and this Court could then have determined whether the statutory requirements had been met. This preliminary injunction did not indicate that *any* sale of these tracts is likely to be illegal. Only the administrative record and the Secretary's decision-making process in this particular sale were found likely to be insufficient, and it is possible that the record in conjunction with a future sale may comply fully with statutory mandates. The plaintiffs could not have sought any relief respecting these 488 tracts independent of the Lease Sale 52 record because, without a specific agency decision under applicable statutes, there is no controversy for the Court to adjudicate.

Lease Sale 52 has been cancelled. These 488 tracts, along with other tracts, are included in the 1984 North Atlantic lease offering, which may be postponed indefinitely. Although the plaintiffs would have this Court view the 1984 sale as simply a "renumbered but identical sale," the 1984 sale will be accompanied by a separate administrative planning and record, involving a new opportunity for the Secretary to report and consider matters as mandated by the statutes, and a new opportunity for judicial review.

■ Mootness is found where there is no longer a justiciable case or controversy between the parties. In that situation, under Article III of the Constitution, a federal court lacks jurisdiction. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *Tennessee Gas Pipeline Co. v. Federal Power Commission,* 606 F.2d 1373, 1379 (D.C.Cir.1979). In *Maryland Casualty Co. v. Pacific Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the Supreme Court, noting the difficulty of fashioning a precise test of universal application for determining whether a request for declaratory relief had become moot, held that, basically, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between par-

ties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Presier v. Newkirk,* 422 U.S. at 402, 95 S.Ct. at 2334, *citing* 312 U.S. at 273, 61 S.Ct. at 512. In these cases before this Court, there is no longer any dispute over the subject of the complaint, Lease Sale 52. The plaintiffs sought injunctions preventing the conduct of Lease Sale 52 until certain steps were taken; by cancelling Lease Sale 52, the defendants have obviated the need for the specific relief sought by the plaintiffs. This Court can render no further relief concerning this sale because there is no longer a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Illsley v. United States Parole and Probation Dept.,* 636 F.2d 1, 2 (1st Cir.1980).

■ Where Lease Sale 52 has been cancelled, further action on the adequacy of the administrative record for this sale on the premise that it could affect a future sale of these same tracts would be merely "advisory," and the Court has no power to render this kind of opinion. *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *St. Pierre v. U.S.,* 319 U.S. 41, 42, 63 S.Ct. 910, 911, 87 L.Ed. 1199 (1943). Effectively, then, this is a case where the Court loses its jurisdiction because "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" which, in this case, is Lease Sale 52 proceeding on the inadequate record. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *Free v. Landrieu,* 666 F.2d 698, 704 (1st Cir.1981); *see also Ashcroft v. Mattis,* 431 U.S. 171, 173, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (emotional involvement is not enough to meet case-or-controversy requirement); *Ruotolo v. Ruotolo,* 572 F.2d 336, 338 (1st Cir.1978) (desirability of advisory opinion is not a substitute for justiciability); *Denver v. Matsch,* 635 F.2d 804, 808 (10th Cir.1980) (as issue is one of power, practical impor-

tance of review cannot control); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3533 (remedies must be justified by continuing present effect or probable future effect, more substantial than naked desire for vindication).

This is not a situation within the exception to the mootness doctrine for subjects "capable of repetition, yet evading review." *Illsely v. United States Parole and Probation Dept.*, 636 F.2d at 2, *Southern Pacific Terminal Company v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). While there is little doubt that an offshore lease sale including all or part of these 488 tracts will occur again, as the approved Department of the Interior schedule provides for such sales, such a sale does not "evade review." If issues concerning proper application of the statutory mandates to the administrative action arise on the record for the 1984 lease offering, they may be addressed by a court at that time.

Since there will be an opportunity for review in conjunction with the 1984 lease offerings, I can perceive no practical hardship in denying adjudication. Moreover, as a practical matter, such adjudication would not have any controlling effect since the administrative record for the 1984 lease offering is likely to be different than that prepared for Lease Sale 52, as the Department of the Interior's notice of cancellation mentions that the 1984 lease offering FEIS takes into account the opinions of both this district court and the court of appeals.

In finding these actions moot, I am particularly mindful of the admonitions of the First Circuit in *Commonwealth of Massachusetts v. Andrus, supra,* where these same plaintiffs sought to have a preliminary injunction continue while the Department of the Interior reconsidered scheduling and conducting the challenged lease sale. The sale had been removed from scheduling, but clearly was to be rescheduled. The First Circuit held that Congress' subsequent adoption of major amendments to the Outer Continental Shelf Lands Act removed the necessity for the preliminary

injunctive relief. I quote at length from the First Circuit's opinion, which offers much helpful guidance in the instant cases:

The plaintiffs urge that the injunction be continued in order to prevent the Secretary from pushing ahead with the lease sale in a manner and for reasons that they fear would be improper. * * * The conservationist plaintiffs go too far when they urge that we instruct the district court to continue the injunction "until such time as the Secretary has complied with OCSLA, as amended, and NEPA and demonstrated unequivocally his good faith in proceed with the Georges Bank leasing program." Citing to cases where federal courts have sought to overcome racial discrimination in local schools, or to force municipal officials to remedy unconstitutional conditions in jails, these plaintiffs urge us to place the Secretary of the Interior in virtual receivership to make certain that he does not subordinate the interests of the fisheries to the interests of those seeking to tap underseas oil and gas deposits.

There is no legal or constitutional precedent for our doing so. Federal courts are courts of limited jurisdiction, and, except for a possible range of exceptions not involved here, may exercise only the authority granted to them by Congress. (citations omitted) Congress has certainly given us no general authority to place prior restraints upon the Department of the Interior in order to force its decision-making into a particular mold. (citation omitted) Our usual authority is limited to reviewing the Secretary's actions as they emerge—as provided in 5 U.S.C. § 706, which, when there is no claim of constitutional or procedural violation, permits a court to set aside the decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." So long as the Secretary's determinations are within the law, are based upon consideration of the relevant factors, and do not involve clear errors of judgment, a

court may not substitute its view. (citations omitted)

594 F.2d at 887–88.

It is true that the defendants have abandoned Lease Sale 52 because they perceive that further litigation may not be worth the effort, and the sales may be achieved through the 1984 offering. Hence, this is not a situation where the defendant has abandoned its position of controversy. However, I cannot conclude that the opposite is the case, that is, that the defendant dropped Lease Sale 52 in a bald attempt to thwart the jurisdiction of this or any other court. I cannot agree with the plaintiffs that the defendants are merely attempting to "forum shop" in an effort to find a court that "will look more favorably upon the identical conduct already enjoined here."[1] The preliminary injunction issued by this Court did not find the proposed leasing itself illegal; rather, I found only that the lease sale could not proceed on the basis of the administrative record for Lease Sale 52. Defendants are not obligated, however, to proceed with Lease Sale 52, and it is within the Secretary's discretion to start anew with another sale and a new record. I have no reason to believe that, in future attempts to lease these tracts, the Secretary will act in bad faith. As the First Circuit noted in *Andrus:*

> The Secretary has not acted so outrageously that we would be justified in summonsing the kind of power that courts occasionally exercise to control those who flout their process. The Secretary has steadfastly maintained that he intends to safeguard the environment, and he has taken a number of important actions towards this end. He has shown no disrespect toward the court. *While there may continue to be important differences necessitating further court proceedings, the Secretary cannot be likened to a municipality bent on violating the civil rights of citizens.*

594 F.2d at 888 (emphasis added). I believe this statement applies as well to the instant cases.

Further, I have no reason to believe that the defendants have included these 488 tracts within the larger 1984 lease offering in an attempt to "dilute" the special characteristics of the Georges Bank area over the wider area of lease offerings. I am confident that the special nature of the Georges Bank region will continue to require environmental assessment apart from and in addition to the FEIS for the 1984 lease offering. *See, e.g., Oregon Environmental Council v. Kunzman,* 714 F.2d 901, 20 ERC 1007, 1010 (9th Cir.1983) (aerial spraying to eradicate gypsy moth infestation based on programmatic EIS and environmental assessment was unreasonable where those studies did not provide site-specific information). I also note the defendants' representations in its memorandum that:

> ... none of the parties is left without judicial guidance on the issues raised by the complaints. This court entered a lengthy opinion on the motions for preliminary injunction, addressing the legal requirements of the applicable statutes. The Court of Appeals for the First Circuit addressed the requirements of the National Environmental Policy Act at length. As noted in the Federal Register notice, *supra,* the Interior Department is following the guidance of both of these opinions as it prepares for the 1984 North Atlantic lease offering.

For the reasons stated above, I must find these actions brought against proposed Lease Sale 52 to be moot. Although the possibility remains that the Secretary may attempt to lease these tracts in a manner that is improper, this Court cannot, in the absence of an Article III case or controversy, place the Secretary into "virtual receivership" to insure that environmental interests are properly considered. As stated succinctly by the First Circuit in *Andrus:*

---

**1.** In any event, such a ploy would be unavailing since our local rules provide for reassignment or transfer of cases "to further the efficient performance of the business of the court, ..." Local Rule 8(g).

In addition, it is neither our role nor the role of the district court to issue advance directions or advice to the Secretary of the Interior as to how he is to exercise the discretion reposed in him by the Congress. The courts can later countermand the Secretary's orders and actions if they are arbitrary, capricious or illegal, but the initiative rests with him.

594 F.2d at 888.

In finding that this Court no longer has before it a justiciable controversy, I must make some final observations. As noted by this Court and the First Circuit, the Georges Bank region is an area of extraordinary biological productivity, supporting one of the most important commercial fisheries in the world. This is "a resource that has taken millions of years to accrue, and which will be with us for better or worse for untold centuries to come." *Commonwealth of Massachusetts v. Andrus*, 594 F.2d at 881 (quoting the District Court). Such a resource will require the Court to review future lease offerings involving the Georges Bank region with particular care.

Accordingly, these matters must be dismissed.

SO ORDERED.