**DAINGERFIELD ISLAND PROTECTIVE SOCIETY, et al., Plaintiffs,**

v.

**Manuel LUJAN, Jr., Secretary, U.S. Department of Interior, et al., Defendants.**

**Civ. A. No. 86–2396.**

United States District Court, District of Columbia.

July 14, 1992.

Ronald J. Wilson and Catherine Cotter, Wilson & Cotter, Washington, D.C., for plaintiffs.

Mark Nagle, Asst. U.S. Atty., Washington, D.C., for defendants.

Thomas F. Farrell, II, McGuire, Woods, Battle & Boorhe, Washington, D.C., for intervenors.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This case is before our Court again on remand from the Court of Appeals. *See* *Daingerfield Island Protective Society v. Lujan*, 920 F.2d 32 (D.C.Cir.1990). Now pending are plaintiffs' motion for partial summary judgment and defendants' and intervenors' motions to dismiss or in the alternative for summary judgment. For the reasons stated herein, defendants' and intervenors' motions to dismiss will be granted in part and denied in part. We will defer on the merits of plaintiffs' remaining claims pending a hearing.

## BACKGROUND

The facts of this case were laid out in *Daingerfield Island Protective Society v. Hodel*, 710 F.Supp. 368 (D.D.C.1989), and will only be briefly summarized here. In 1970, the Secretary of the Interior signed an Exchange Agreement under which the National Park Service ("NPS") would receive title to Dyke Marsh, a wetland on the Potomac River, in exchange for granting developer Charles Fairchild & Co. ("Fairchild") an easement over the George Washington Memorial Parkway to construct an interchange which would provide access to and from Potomac Greens, where Fairchild planned to build a large office, hotel, and residential complex on land he leased from intervenor Richmond, Fredericksburg & Potomac Railroad Co. ("RF & P"). Fairchild waited until 1971 to sign the Exchange Agreement, at which time the United States obtained the deed to Dyke Marsh. After a decade of disagreement over the interchange design, NPS approved a design in 1981 while reserving its right to make changes when a more detailed proposal was made. In 1984, the United States conveyed the easement to RF & P, Fairchild's successor. In 1986, RF & P entered a joint venture and announced plans to build a somewhat smaller Potomac Greens complex. Plaintiffs then commenced this action, alleging that the Exchange Agreement violated numerous statutes,[1] that NPS' approval of the interchange violated numerous statutes and an Executive Or-

1. The statutes which plaintiffs alleged that the Exchange Agreement violate are the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 *et seq.* (Count I); the Land and Water Conservation Fund Act, 16 U.S.C. § 460*l*–22(b) (Count II); the Mount Vernon Highway Act, 45 Stat. 721, and the Capper–Cramton Act, 46 Stat. 482 (Count III); the National Park Service Organic Act, 16 U.S.C. § 1 *et seq.* (Count IV); the National Capital Planning Act, 40 U.S.C. § 71 *et seq.* (Count V); the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* (Count VI); and the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.* (Count IX).

der,[2] and that the National Capital Planning Commission's ("NCPC") approval of the interchange violated the National Capital Planning Act (Count VII).

This Court dismissed the case on April 11, 1989, holding that (1) the claims challenging the validity of the Exchange Agreement were barred by laches, and (2) the claims challenging the interchange design were mooted by the Continuing Appropriations Act of 1987. 710 F.Supp. at 377. Plaintiffs appealed. The Court of Appeals summarily affirmed dismissal of the NEPA claim (Count I), but vacated, reversed, and remanded as to all other counts.[3] 920 F.2d at 36, 40. Intervenors petitioned the Supreme Court for review on the applicability of the laches doctrine, but certiorari was denied on October 7, 1991. *Richmond, Fredericksburg & Potomac Railroad Co. v. Daingerfield Island Protective Society,* — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

Defendants interpose two defenses which, if successful, would dispose of plaintiffs' claims. First, defendants allege that this suit was filed after the applicable statute of limitations had run and is thus time barred. Second, they assert that most of the statutes and other authorities invoked by plaintiffs do not authorize a private cause of action. These will be addressed in turn.

## STATUTE OF LIMITATIONS

Defendants argue that plaintiffs' challenges to the 1970 Exchange Agreement are barred by 28 U.S.C. § 2401(a), which states in pertinent part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." If this statute applies, plaintiffs' claims regarding the land exchange would indeed be foreclosed.[4]

---

**2.** The statutes which plaintiffs alleged that NPS' approval of the interchange design violated are NEPA (Count I); the Mount Vernon Highway Act and the Capper–Cramton Act (Count III); the National Park Service Organic Act (Count IV); the APA (Count VI); Executive Order No. 11988 and Floodplain Management Guidelines, 45 Fed.Reg. 35916 (May 28, 1980) (Count VIII); and the National Historic Preservation Act (Count IX).

The Court of Appeals decision mistakenly stated that Count V alleged violations of the National Capital Planning Act relating to both the land exchange and the interchange design. 920 F.2d at 35. Count V of plaintiffs' Amended Complaint, however, only alleges that this Act was violated in regards to NPS' approval of the land exchange, not the interchange design. Amended Complaint at ¶¶ 72–78. In addition, it is implicit in plaintiffs' original motion for summary judgment that only NPS' approval of the exchange agreement is challenged under this count. Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment and in Opposition to Defendants' and Intervenors' Motions to Dismiss or for Summary Judgment at 74 (filed April 13, 1987). We will thus treat Count V as only challenging the land exchange.

**3.** This Court's laches holding was reversed because the Court of Appeals found that defendants and intervenors had "failed to demonstrate sufficient prejudice from the delay." 920 F.2d at 38. The mootness holding was vacated because "[c]loser, claim-specific analysis would be required before ... the 'heavy' burden of demonstrating mootness" could be met. *Id.* at 37 (citation omitted).

**4.** The complaint in this case was filed on August 27, 1986. Plaintiffs now argue that their causes of action regarding the Exchange Agreement did not accrue until August, 1984, when the deed for the easement across the George Washington Memorial Parkway was issued by the Secretary of the Interior, and that, therefore, these claims fall within the limitations period. Plaintiffs' Reply to Defendants' and Intervenors' Oppositions to Motion for Partial Summary Judgment ("Plaintiffs' Reply") at 11–15. Plaintiffs' Amended Complaint states clearly, however, that they are challenging NPS' approval of the land exchange. *See, e.g.,* Amended Complaint at ¶¶ 65, 70. This occurred, at the latest, on the date when the Agreement, by its terms, became effective, July 6, 1971. 920 F.2d at 34. Plaintiffs' cause of action thus accrued on that date, and if § 2401(a) applies, plaintiffs' complaint falls well outside of the limitations period.

In addition, the Court of Appeals held that plaintiffs' failure to challenge the Exchange Agreement earlier was "inexcusable," *id.* at 38, implying that they recognized that this cause of action accrued long before 1984. If the cause of action had not accrued until 1984, it could hardly be said that this relatively insignificant delay was inexcusable.

Plaintiffs' other set of claims, regarding the approval of the interchange design, are unaffected by whether or not § 2401(a) applies to this suit, because this approval did not occur until 1983, which is within the limitations period. *See id.* at 35.

Plaintiffs reply that (1) § 2401(a) does not apply to this case, and (2) even if it does, defendants have waived their statute of limitations objection. Because the law of this Circuit unambiguously and inexorably applies § 2401(a) to suits against the federal government, and because defendants did not waive their statute of limitations defense, plaintiffs' claims relating to the validity of the Exchange Agreement will be dismissed as time barred.

■ Plaintiffs argue that § 2401(a) does not apply to claims raised pursuant to the Administrative Procedure Act ("APA") because the two statutory schemes are mutually exclusive[5] and the APA contains an independent waiver of sovereign immunity which effectively supersedes the more limited waiver of § 2401(a). Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment and in Opposition to Defendants' and Intervenors' Motions to Dismiss or for Summary Judgment ("Plaintiffs' Motion") at 5–10. This argument is not compelling. While it is true that the APA constitutes an independent waiver of sovereign immunity, this does not imply that the grant is limitless. The broad language of § 2401(a) (it covers "every civil action" against the United States) read literally circumscribes this waiver.

More importantly, the law of this Circuit could not be clearer with respect to the applicability of § 2401(a) to claims raised pursuant to the APA (or any claim, for that matter). The Court of Appeals for the District of Columbia Circuit has stated that "the words 'every civil action' mean what they say.... [T]his court's ... opinions clarify beyond dispute that § 2401(a) applies to all civil actions whether legal, equitable or mixed." *Spannaus v. United States Department of Justice*, 824 F.2d 52,

55 (D.C.Cir.1987) (citations omitted). Section 2401(a) has been applied to a wide variety of claims asserted under numerous statutes. *See, e.g., Mason v. Judges of the United States Court of Appeals*, 952 F.2d 423, 424–25 (D.C.Cir.1991) (challenging court's decision not to publish opinion); *Walters v. Secretary of Defense*, 725 F.2d 107, 111–14 (D.C.Cir.1983) (upgrade of military discharge); *Impro Products, Inc. v. Block*, 722 F.2d 845, 849–51 & n. 8 (D.C.Cir. 1983) (APA challenge to agency's distribution of an article relating to plaintiff's product), *cert. denied*, 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed.2d 264 (1984); *White v. United States Civil Service Commission*, 589 F.2d 713, 715 (D.C.Cir.1978) (APA challenge to denial of request to remove evaluations from personnel file), *cert. denied*, 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 39 (1979); *Oppenheim v. Campbell*, 571 F.2d 660, 662–63 (D.C.Cir.1978) (claim for retirement credits).[6]

Thus, the six-year limitation period specified in § 2401(a) has been construed as applying to virtually every type of civil claim (other than tort or contract actions, for which separate periods have been enacted, *see* 28 U.S.C. § 2401(b); 41 U.S.C. § 609(a)(3)) which could be asserted against agencies of the United States. It shall similarly be applied here.

Plaintiffs next argue that even if § 2401(a) applies to this cause of action, defendants have waived their ability to invoke it. Defendants acknowledge that they did not raise this issue in their original motion to dismiss. Memorandum in Opposition to Plaintiffs' Cross–Motion for Partial Summary Judgment and in Further Support of Federal Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment ("Defendants' Opposition")

---

**5.** § 2401(a) is part of the Tucker Act, 28 U.S.C. § 1491, which allows for contract claims against the government. Equitable claims generally are not cognizable under the Tucker Act. *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983). In contrast, the APA is designed to afford only equitable relief. 5 U.S.C. § 702.

**6.** Plaintiffs have carefully pointed out why they believe several of these cases were incorrectly

decided. Plaintiffs' Motion at 14–20. However, it is not our role as a District Court to reconsider the clear and overwhelming precedent of this Circuit. Interestingly, plaintiffs have cited to *no* cases which hold that § 2401(a) does *not* apply to a case brought under the APA. This lacuna in the face of substantial precedent to the contrary leaves plaintiffs without an argument before our Court on this point.

at 2. Their misplaced reliance on the defense of *laches* which the Court of Appeals refused to accept speaks eloquently of the defendants' reasons for not previously invoking § 2401(a). In addition, they make several arguments to defeat plaintiffs' claim of waiver, among them that the statute of limitations is not a defense that is subject to waiver under Fed.R.Civ.P. 12(h).

■■■■ We hold that defendants did not waive their statute of limitations defense. When a party brings a motion to dismiss under Rule 12, it must consolidate all defenses or objections which it could bring under the rule. Fed.R.Civ.P. 12(g). If a defense or objection which the rule permits is omitted, the party generally may not thereafter make a motion based on that defense or objection. *Id.* One of the exceptions to this rule of consolidation of defenses or objections, however, is the defense of failure to state a claim upon which relief can be granted (*i.e.*, a Rule 12(b)(6) defense). Fed.R.Civ.P. 12(h)(2). If a party fails to raise this defense, it is not waived. *Stock 'In S.A. v. Swissco, Inc.*, 748 F.Supp. 23, 27 (D.D.C.1990); *see also* 5A Wright & Miller, *Federal Practice and Procedure* § 1392 at 759–60 (1990) (citing cases). While it is the general practice to raise a statute of limitations defense by motion under Rule 12(b)(6), it is not an error to fail to do so. *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 360 (D.C.Cir. 1982); *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987). Thus, this defense cannot be waived by the failure to interpose it in a motion under Rule 12. A Rule 12(b)(6) defense cannot be so waived.

Because we find that § 2401(a) applies to plaintiffs' claims regarding the Exchange Agreement and that defendants have not waived this statute of limitations defense, those claims which challenge the validity of the Exchange Agreement shall be dismissed as being time barred.[7] Thus, Counts II and V (which relate only to the land exchange and *not* to the interchange design) shall be dismissed in their entirety, and Counts III, IV, VI, and IX shall be dismissed insofar as they challenge the land exchange.

## PRIVATE RIGHTS OF ACTION

■■■ Defendants argue[8] that the remaining counts (not including Count VI, brought pursuant to the APA) should be dismissed because the statutes involved do not grant private rights of action. We need not engage in a detailed analysis of each statute to determine whether the test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny is satisfied because the Supreme Court has held that under the APA, it is not necessary to find a private right of action under a particular statute in order to enforce a federal agency's compliance with that statute. *Chrysler Corp. v. Brown*, 441 U.S. 281, 317–19, 99 S.Ct. 1705, 1725–26, 60 L.Ed.2d 208 (1979). In *Chrysler*, the Court held that, although the Trade Secrets Act, 18 U.S.C. § 1905, does not provide a private right of action, the plaintiff could obtain review of a federal agency's compliance with that statute through APA review of agency action. 441 U.S. at 316–19, 99 S.Ct. at 1725–26.

The principle of judicial review of the substantive validity of agency action, pur-

---

**7.** Plaintiffs also argue that § 2401(a) does not apply to this suit because only officials of the United States allegedly acting *ultra vires* (and therefore not entitled to sovereign immunity) are named as defendants. Plaintiffs' Motion at 27–29. This argument has no merit. As the Court of Appeals of this circuit recently stated, "a civil action against a federal official based on that person's official actions is 'a civil action commenced against the United States' under § 2401(a)." *Mason*, 952 F.2d at 425.

Plaintiffs' argument that courts may correct clear statutory violations unless Congress has expressly forbidden it is equally unavailing.

*See* Plaintiffs' Motion at 29–30. Plaintiffs have cited to no authority which would allow a court to ignore an unambiguous statute of limitations in this setting.

**8.** Defendants and intervenors appear to disagree as to whether the National Park Service Organic Act (Count IV) gives rise to a private cause of action. *Compare* Memorandum in Support of Federal Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment at 7 *with* Intervenors' Memorandum in Support of Motion to Dismiss or for Summary Judgment at 7.

**30**

suant to the APA, is well established. *See, e.g., Worthington Compressors, Inc. v. Costle,* 662 F.2d 45, 50 (D.C.Cir.1981) (while there is no private right of action under the Noise Control Act of 1972, 42 U.S.C. §§ 4901–4918, if agency violates that statute, the action can be struck down under the APA); *Sierra Club v. Hodel,* 848 F.2d 1068, 1076 (10th Cir.1988); *Oregon Environmental Council v. Kunzman,* 714 F.2d 901, 903 (9th Cir.1983). Indeed, several of the authorities which plaintiffs rely upon have been enforced previously under the APA by this and other federal courts. *See, e.g., Sierra Club v. Andrus,* 487 F.Supp. 443, 448 (D.D.C.1980) (enforcing the National Park Service Organic Act), *aff'd,* 659 F.2d 203 (D.C.Cir.1981); *No Oilport! v. Carter,* 520 F.Supp. 334 (W.D.Wash.1981) (claim under the APA alleging violation of Executive Order 11988 properly before court).

Federal defendants assert that plaintiffs may not invoke the APA to prevent these counts from being dismissed because plaintiffs did not so plead in their Amended Complaint. Defendants' Opposition at 8. Defendants are correct that the judicial review provision of the APA is not mentioned specifically in the Amended Complaint. Plaintiffs' argument, however, surely comes as no surprise to defendants, because plaintiffs, while not citing to the APA by name, invoked its familiar language throughout the Amended Complaint, asking this Court to find that the agencies' alleged failure to abide by the statutes and executive order in question was "arbitrary, capricious, an abuse of discretion, and not in accordance with law." *See* Amended Complaint at ¶¶ 70, 71, 78, 116, 137.

This Court has no difficulty rejecting federal defendants' hyper-technical argument. As was said in another context by the late Justice Cardozo when Chief Judge of the New York Court of Appeals, "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." *Wood v. Lady Duff–Gordon,* 222 N.Y. 88, 90, 118 N.E. 214 (1917). The federal rules were designed to avoid basing

decisions on the merits on pleading technicalities, *In re Credit Industrial Corp.,* 366 F.2d 402, 411 (2d Cir.1966), and we are not going to do so here.

CONCLUSION

Counts II and V of plaintiffs' Amended Complaint will be dismissed, and Counts III, IV, VI, and IX will be dismissed insofar as they challenge the land exchange.